754 So.2d 1136 (1999)
L.W., Individually and as Next Friend of Her Son, J.A.
v.
The McCOMB SEPARATE MUNICIPAL SCHOOL DISTRICT and Unknown John Does 1-5.
No. 97-CA-01465-SCT.
Supreme Court of Mississippi.
September 2, 1999.
*1137 Rodney G. Tidwell, Alfred Lee Felder, McComb, Attorneys for Appellants.
Alben N. Hopkins, Thomas A. Waller, Gulfport, Attorneys for Appellees.
EN BANC.

ON MOTION FOR REHEARING
SMITH, Justice, for the Court:

STATEMENT OF THE CASE
¶ 1. Motion for rehearing denied. The original opinion is withdrawn and this opinion is substituted therefor.
¶ 2. On October 9, 1995, the minor plaintiff/appellant J.A. turned fourteen years old. J.A. is a student at Denman Middle School in the McComb School District. On that morning, J.A. was threatened by a fellow student, Matthew Garner, while in music class. J.A. told Mr. Dykes, a nearby teacher, of the threats. The teacher did nothing in response.
¶ 3. That afternoon, both J.A. and Matthew were in after-school detention. During this time, Matthew again threatened J.A. in front of the detention teacher, Mrs. Paul. As they left detention, Matthew followed J.A. across the school's baseball field. At this point, words were exchanged, and Matthew attacked J.A. Matthew struck him in the face and ordered him to perform oral sex. When J.A. resisted, Matthew continued to beat him and forced him to perform the act. The incident was witnessed by one student and later reported to a coach. Upon knowledge of the incident, J.A. was taken by his mother, L.W., to the hospital.
¶ 4. On January 9, 1997, L.W., individually and as next friend of her son J.A., brought suit in Pike County Circuit Court against the McComb Separate Municipal School District (the "School") and unknown John Does 1-5. L.W. alleges that the School was negligent in failing to maintain a safe environment; in failing to properly monitor its grounds; in failing to properly supervise its students; in failing to have a route of safe departure for detention students; and for other acts of negligence.
¶ 5. On March 21, 1997, the School filed a Motion to Dismiss on grounds that the Mississippi Sovereign Immunity Act, §§ 11-46-1 et seq. (Supp.1998), immunized them from the suit. On June 24, 1997, L.W. responded to the motion to dismiss by denying the absolute immunity of the School, and alternatively, by claiming the School's purchase of liability insurance waived any immunity.
¶ 6. On October 13, 1997, Pike County Circuit Judge Keith Starrett granted the School's Motion to Dismiss pursuant to Miss.R.Civ.Proc. 12(b)(6). He stated that the statute immunizes the School for administrative action or inaction and/or failure to perform a discretionary duty. Furthermore, he held that T.M. v. Noblitt, 650 So.2d 1340 (Miss.1995), cited by L.W., does *1138 not apply, because the cause of action in that case occurred prior to the enactment of the statute.
¶ 7. Aggrieved, L.W. now appeals to this Court and raises the following issues:
I. WHETHER THE TRIAL COURT ERRED WHEN IT DISMISSED L.W.'S LAWSUIT BECAUSE DISCRETIONARY ACTS OF NEGLIGENCE WERE ALLEGED TOGETHER WITH A GENERAL ALLEGATION OF NEGLIGENCE.
II. WHETHER THE TRIAL COURT ERRED WHEN IT DISMISSED L.W.'S LAWSUIT BECAUSE SEVERAL OF THE ACTS OF NEGLIGENCE ALLEGED IN THE COMPLAINT WERE DISCRETIONARY.
III. WHETHER THE SOVEREIGN IMMUNITY PROTECTIONS OF SECTION 11-46-9 OF THE MISSISSIPPI CODE ANNOTATED ARE WAIVED WHEN A GOVERNMENTAL ENTITY PURCHASES LIABILITY INSURANCE IN EXCESS OF THE LIMITS IN SECTION 11-46-15.

STANDARD OF REVIEW
¶ 8. A motion to dismiss under Miss.R.Civ.P. 12(b)(6) raises an issue of law. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990); Lester Engineering Co. v. Richland Water and Sewer Dist., 504 So.2d 1185, 1187 (Miss.1987). This Court conducts de novo review on questions of law. UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc., 525 So.2d 746, 754 (Miss.1987).
¶ 9. When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim. Butler v. Bd. of Supervisors for Hinds County, 659 So.2d 578, 581 (Miss.1995); Overstreet v. Merlos, 570 So.2d 1196, 1197 (Miss.1990).

LEGAL ANALYSIS

I. WHETHER THE TRIAL COURT ERRED WHEN IT DISMISSED L.W.'S LAWSUIT BECAUSE DISCRETIONARY ACTS OF NEGLIGENCE WERE ALLEGED TOGETHER WITH A GENERAL ALLEGATION OF NEGLIGENCE.
¶ 10. L.W. contends that her complaint was sufficient under notice pleadings, because she alleged negligence and demanded relief both generally and specifically. Therefore, she continues, if the trial court found some of those acts barred as discretionary duties under sovereign immunity, there still should remain sufficient allegations under notice pleadings to allow the lawsuit to proceed. This is not true.
¶ 11. The Mississippi Tort Claims Act ("MTCA") provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit. Miss.Code Ann. § 11-46-7(1) (Supp.1998)[1]; Moore v. Carroll County, Mississippi, 960 F.Supp. 1084, 1088 (N.D.Miss.1997)("The remedy provided pursuant to the MTCA is exclusive of any other state law remedy sought against a governmental entity or its employee."). Any tort claim filed against a governmental entity or its employee shall be brought only under the MTCA. Id.
¶ 12. The MTCA waives sovereign immunity from claims for money damages arising out of the torts of governmental entities and their employees from and after October 1, 1993, for political subdivisions. Miss.Code Ann. § 11-46-5(1) (Supp.1998); Chamberlin v. City of Hernando, *1139 716 So.2d 596, 600 (Miss.1998). The MTCA defines a "school district" as a "political subdivision" and a "governmental entity." Miss.Code Ann. § 11-46-1(g), (i) (Supp.1998); see also Gressett v. Newton Separate Mun. Sch. Dist., 697 So.2d 444, 446(¶ 4) (Miss.1997). However, certain circumstances are exempted from this waiver of immunity. Miss.Code Ann. § 11-46-9 (Supp.1998).
¶ 13. In Stanton & Associates v. Bryant Const. Co., this Court stated:
Rule 8(a), Miss.R.Civ.P., requires only that in its complaint a plaintiff provide (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and, (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded. Rule 8(e), Miss. R.Civ.P., then provides (1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required. When a complaint is tested via a motion under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the sufficiency of the complaint is in substantial part determined by reference to Rule 8(a) and (e). The leading federal case, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957), construing an identically worded provision of the Federal Rules of Civil Procedure, states that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief."
464 So.2d 499, 505 (Miss.1985)(emphasis added & footnotes omitted). If the exemptions to waiver of sovereign immunity under the MTCA apply as the trial court concluded, then it is "beyond doubt" that L.W. can prove no set of facts to support his claim and entitle him to relief. The MTCA is the exclusive remedy for L.W.'s claims.

II. WHETHER THE TRIAL COURT ERRED WHEN IT DISMISSED L.W.'S LAWSUIT BECAUSE SEVERAL OF THE ACTS OF NEGLIGENCE ALLEGED IN THE COMPLAINT WERE DISCRETIONARY.
A. The Trial Court Erred in Dismissing L.W.'s Lawsuit Since the Acts of Negligence Alleged in the Complaint Are Not Governmental Policy Decisions.
1. Section 11-46-9(1)(d) Is In Derogation of the Common Law Right and Should Be Read Narrowly.
¶ 14. The trial court's order stated, in part:
... That the allegations as set forth in the complaint, except for the one stating "other acts of negligence," allege something that would be provided for by administrative action or inaction of a legislative nature and/or failure to perform a discretionary function or a duty; and
That the exercise of discretion was called for in the acts of negligence alleged and therefore, the McComb School District is absolutely immune from suit;
* * * *
... That the allegations as set forth in the complaint require use of discretion and therefore the school district is immune pursuant to Section 11-46-9(d) [sic] ...
Subsection (d) states:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
* * * *
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
*1140 Miss.Code Ann. § 11-46-9(1)(d) (Supp. 1998).
¶ 15. One of this Court's maxims of statutory construction is that the legislative intent must be determined from the total language of the act and not from one section considered apart from the remainder. Lee v. Alexander, 607 So.2d 30, 36 (Miss.1992); Pearl River Valley Water Supply Dist. v. Hinds County, 445 So.2d 1330 (Miss.1984). Therefore, in this analysis, it will be necessary to determine the application of subsections in their relation to the whole.
¶ 16. L.W. argues that subsection (d) is a continuation of the common law public officials' sovereign immunity, but with the additional constraint to the plaintiff of allowing the defendant to abuse his discretion. Evans v. Trader, 614 So.2d 955, 957 (Miss.1993). However, Evans does not cite the subsection, section, or the statute at issue, because it predates the effective date of implementation of the MTCA. Id. Despite Evans, L.W.'s assertion does appear correct when one reads the plain language of the legislative intent, as follows:
Declaration of legislative intent.
(2) The immunity of the state and its political subdivisions recognized and reenacted herein is and always has been the law in this state, before and after November 10, 1982, and before and after July 1, 1984, and is and has been in full force and effect in this state except only in the case of rights which, prior to the date of final passage hereof, have become vested by final judgment of a court of competent jurisdiction or by the express terms of any written contract or other instrument in writing.
Miss.Code Ann. § 11-46-3(2) (Supp.1998); Fortune v. Lee County Bd. of Supervisors, 725 So.2d 747, 750 (¶ 5)(Miss.1998).[2]
¶ 17. Next, L.W. argues that the addition of the abuse of discretion phrase into subsection (d) is in derogation of the common law right; therefore, the subsection should then be construed against any such limitation under the rules of statutory construction. Mississippi Milk Comm'n v. Winn-Dixie Louisiana, Inc., 235 So.2d 684, 688 (Miss.1970). However, this rule of statutory construction has been expressly abolished by this Court. McCluskey v. Thompson, 363 So.2d 256, 261-64 (Miss.1978)(citing Vol. 3, R. Pound, Jurisprudence, § 111, at 663-665 (1959)); see also Southern Natural Gas Co. v. Pursue Energy, 781 F.2d 1079, 1088 (5th Cir.1986). Rather, this Court has determined that the common law must give way to statutes. McCluskey at 264. This analysis will move to the next sub-issue, because the rest of the L.W.'s argument on this sub-issue is premised on a rule of statutory construction that has been abolished.

2. Section 11-46-9(1)(d) Should Be Read Narrowly Because The Broad Reading Employed by the Trial Court Would Nullify Most of the Other Subsections of Section 11-46-9(1).
¶ 18. The School successfully argued to the trial court that subsection (d) of § 11-46-9(1) is a catchall exemption for all discretionary functions or duties. Since discretion was involved in the School's negligence, the trial court found the lawsuit was totally barred by the statute. L.W. argues that this ruling applied an overly broad interpretation to the statute.
¶ 19. L.W. contends that if this interpretation is accepted by this Court, then subsection (d) would obviate the purpose and need for the majority of other subsections under section 11-46-9(1). Plaintiff argues that twelve other subsections necessarily require some element of discretion, e.g. subsection "(a) Arising out of a legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature." Miss.Code Ann. § 11-46-9(1)(a) (Supp.1998). In other words, if the broad interpretation employed by the *1141 trial court is allowed, then the exemption will swallow the waiver of immunity.
¶ 20. The School counters that L.W. confuses statutory sovereign immunity with common law qualified immunity. Defendant School contends that subsection (d) and common law qualified immunity are alike in that the court must determine whether or not the function of the governmental actor was discretionary. But they differ in that statutory sovereign immunity requires only the simple, straightforward determination of discretion; whereas, with common law qualified immunity, discretion is not the sole determining factor. T.M. ex rel. E.N.M. v. Noblitt, 650 So.2d 1340, 1346 (Miss.1995)(Banks, J. concurring). The Legislature specifically chose not to put any additional requirements on statutory sovereign immunity. For example, the Legislature expressly stated that it does not matter "whether or not the discretion be abused" in order to be exempt from liability. Miss.Code Ann. § 11-46-9(1)(d) (Supp.1998).
¶ 21. Since both statutory and common law immunity require a determination of discretion, prior case law can be used to define discretionary conduct. In Noblitt, this Court accepted the trial court's definition which stated that "[a] duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof." 650 So.2d at 1343 (citing Poyner v. Gilmore, 171 Miss. 859, 158 So. 922, 923 (1935)); see also Dalehite v. United States, 346 U.S. 15, 35-36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953) (interpreting "discretionary function" under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680 (1982), the United States Supreme Court stated that discretion means "more than the initiation of programs and activities.... Where there is room for policy judgment and decision there is discretion.")
¶ 22. In contrast, an act is ministerial "(if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." Id. at 1344 (quoting Davis v. Little, 362 So.2d 642, 644 (Miss.1978) and Poyner at 922). Additionally, this Court said that the duty to hire and supervise employees is necessarily and logically dependent on discretion. Id.
¶ 23. The School argues that L.W.'s allegations involve discretionary conduct rather than ministerial, because providing supervision, monitoring, and a safe environment satisfy Noblitt. See also Mohundro v. Alcorn County, 675 So.2d 848, 854 (Miss.1996)("road maintenance and repair are discretionary rather than ministerial..."); Glover ex rel. Glover v. Donnell, 878 F.Supp. 898, 901 (S.D.Miss.1995)(defendant's conduct was discretionary and therefore immune where plaintiff alleged a failure to properly supervise and protect her from other participants in a governmental program). This Court finds that the L.W.'s allegations do in fact involve discretionary conduct rather than ministerial.
¶ 24. However, merely finding that the conduct at issue in the instant case was discretionary does not fully resolve the matter as the School suggests. As will be shown below, both state and federal law support our conclusion that public schools have the responsibility to use ordinary care and take reasonable steps to minimize risks to students thereby providing a safe school environment.
¶ 25. Miss.Code Ann. § 11-46-9 requires a minimum standard of ordinary care be exercised by the government actor in order to raise the statutory shield:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
. . . .
(b) Arising out of any act or omission of an employee of a governmental *1142 entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;
Miss.Code Ann. § 11-46-9(1)(b) (emphasis added). Under this statute, as long as ordinary care is used while performing a statutory duty, immunity exists. But when the state actor fails to use ordinary care in executing or performing or failing to execute or perform an act mandated by statute, there is no shield of immunity. One such statutory duty applicable to public schools is the following:
It shall be the duty of each superintendent, principal and teacher in the public schools of this state to enforce in the schools the courses of study prescribed by law or by the state board of education, to comply with the law in distribution and use of free textbooks, and to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct at school, on the way to and from school, on the playgrounds, and during recess.
Miss.Code Ann. § 37-9-69 (emphasis added). This statute mandates that school personnel maintain appropriate control and discipline of students while the children are in their care. Furthermore, the State of Mississippi mandates compulsory school attendance for all children upon penalty of law. Miss.Code Ann. § 37-13-91 (Supp.1998).[3] Since the state requires all children to be enrolled in school, it only seems logical that the state should then require school personnel to use ordinary care in administering our public schools.[4]
¶ 26. The teachers and administrators here are then protected by sovereign immunity if and only if they used ordinary care in controlling and disciplining their students. The issue of ordinary care is a fact question. The trial court, confronted with all the relevant facts, should then under our law, decide whether or not those responsible used ordinary care as required by the statute. If the trial judge concludes that they failed, neither they nor the school are immune from liability.
¶ 27. In Mosby v. Moore, 716 So.2d 551, 557-558 (Miss.1998), this Court stated as follows:
While there is no flexible rule to distinguish whether an act is ministerial or discretionary, the most important criteria is if the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the condition specified, not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial.
Id. at 557-558 (quoting Barrett v. Miller, 599 So.2d 559, 567 (Miss.1992)). Therefore, the statutorily imposed obligation to "hold the pupils to strict account", a ministerial dictate, trumps the discretionary exception, regardless of the amount of discretion school personnel may exercise in carrying out this statutory obligation.
*1143 ¶ 28. Federal law also supports our conclusion. Applying a similarly worded exception to the FTCA, a federal district court has held:
The discretionary function exemption is intended to protect public policy objectives. (citations omitted.) It would run counter to the discretionary function exemption to second-guess or micromanage the kinds of steps appropriate to maximize safety in government facilities, even where the decisions are made below the policy level. United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Within that broad discretion, reasonable steps of a type determined by management to minimize risks of personal injury are necessary. Failure to take any such steps where feasible is negligent and not within the discretionary function exemption, even though the particular nature of the appropriate steps is discretionary. Andrulonis v. United States, 952 F.2d 652 (2d Cir.1991); see also Indian Towing v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).
Wright v. United States, 866 F.Supp. 804, 806 (S.D.N.Y.1994)[5] (emphasis added). In this case, a guest was injured in a fall in a wedding chapel owned by the federal government. Id.
¶ 29. Here, L.W. claimed negligence in maintenance and supervision of the premises. The government claimed exemption under this discretionary function exception. The district court denied both parties' motions for summary judgment stating that the discretionary function exception did apply, but reasonable steps to minimize risks are still necessary. Id. Schools have the responsibility to use ordinary care to provide a safe school environment. Bd. of Trustees of the Pascagoula Municipal Separate Sch. Dist. v. Doe, 508 So.2d 1081, 1085 (Miss.1987); see also S-1 v. Turlington, 635 F.2d 342, 348 n. 9 (5th Cir.1981). Taking reasonable steps to minimize risks is one way to provide a safe school environment. Therefore, both Mississippi and federal law support our holding that sovereign immunity is inapplicable as an absolute bar to L.W.'s case. The lower court's dismissal is thus reversed and remanded.
B. Even If the Discretionary/Ministerial Dichotomy Is Applicable To This Case, This Case Should Not Have Been Dismissed Because The Plaintiff Has Not Had An Opportunity to Discover Whether The Defendant Violated Any Ministerial Duties.
C. This Court Envisioned the Mississippi Tort Claims Act As Providing Relief In A Case Such As the Present Case.
¶ 30. Discussion of sub-issues B. and C. is rendered moot by our reversal in A.

III. WHETHER THE SOVEREIGN IMMUNITY PROTECTIONS OF SECTION 11-46-9 OF THE MISSISSIPPI CODE ANNOTATED ARE WAIVED WHEN A GOVERNMENTAL ENTITY PURCHASES LIABILITY INSURANCE IN EXCESS OF THE LIMITS IN SECTION 11-46-15.
¶ 31. L.W. believes that Defendant School has a $500,000 liability insurance policy that would cover the type of injury in this case. However, without discovery, L.W. cannot confirm the existence of any liability insurance. L.W. asserts that if such a policy exists, she should be able to sue the sovereign up to the policy limits *1144 under Miss.Code Ann. § 11-46-17(4). The statute states in pertinent part:
Any governmental entity of the state may purchase liability insurance to cover claims in excess of the amounts provided for in Section 11-46-15 and may be sued by anyone in excess of the amounts provided for in Section 11-46-15 to the extent of such excess insurance carried; provided, however, that the immunity from suit above the amounts provided for in Section 11-46-15 shall be waived only to the extent of such excess liability insurance carried.
Miss.Code Ann. § 11-46-17(4) (Supp. 1998).[6]
¶ 32. Prior to the enactment of the MTCA, this Court held that the defendant sovereign was estopped from asserting sovereign immunity if it had purchased a public liability policy. Churchill v. Pearl River Basin Dev. Dist., 619 So.2d 900, 906 (Miss.1993). There, the plaintiff's tort claims were allowed to the extent of the policy in Churchill. Id. In accord with the statute and Churchill, L.W. argues that her suit should be allowed.
¶ 33. The School argues instead that the MTCA has "laid to rest" Churchill, because under the statute, a sovereign must first be found liable before damages should be considered. The School points to Section 11-46-17(3) which states in pertinent part:
All political subdivisions shall, from and after October 1, 1993, obtain such policy or policies of insurance, establish such self-insurance reserves, or provide a combination of such insurance and reserves as necessary to cover all risks of claims and suits for which political sub-divisions may be liable under this chapter;....
Miss.Code Ann. § 11-46-17(3) (Supp.1998)(emphasis added). Since "may" is discretionary, the School argues that a determination of liability is a condition precedent to examining damages and insurance.
¶ 34. This Court has recently upheld the Churchill rationale with regards to a pre-MTCA cause of action stating:
... regardless of whether or not the City of Yazoo City was cloaked with sovereign immunity in the instant case, the liability insurance procured by it to cover instances such as Jerome Hord's injury necessitates reversal in this case. A plaintiff may be entitled to recover if the governmental entity has purchased liability insurance which covers the type of injury the plaintiff suffered. Churchill v. Pearl River Basin Dev. Dist., 619 So.2d 900, 905-06 (Miss.1993).
Hord v. City of Yazoo City, 702 So.2d 121, 124 (¶ 13) (Miss.1997) (C.J. Lee, concurring; joined by JJ. Pittman, Banks, McRae, and Roberts). However, Hord and Churchill both involved pre-MTCA tort claims. Here, the MTCA is in full force and effect. Thus, the School is correct in asserting that Churchill has been laid to rest by the MTCA. The purchase of insurance does not affect potential defenses under Miss.Code Ann. § 11-46-9. Otherwise, sovereigns would be unlikely to continue to purchase insurance if it had the effect of waiving all of their defenses under the MTCA-an undesirable and unintended result in this Court's view.
¶ 35. Accordingly, this Court holds that Miss.Code Ann. § 11-46-17(4)(Supp.1998) allows for the purchase of *1145 insurance by a sovereign which then covers claims in excess of the amounts set by Miss.Code Ann. § 11-46-15 (Supp.1998) to the extent of the policy. This provision does not limit the exclusions or exemptions enumerated in Section 11-46-9.

CONCLUSION
¶ 36. The Mississippi Tort Claims Act provides the exclusive civil remedy for the Plaintiff's claims of negligence against a school district. The common law must give way to statutes.
¶ 37. The Defendant School's conduct at issue is best described as discretionary. However, there is a ministerial aspect, because both state and federal law place a duty of ordinary care on school personnel to minimize risks of personal injury to provide a safe school environment. Therefore, the case is reversed and remanded.
¶ 38. This case is also reversed and remanded to determine whether the Defendant School has a liability insurance policy in effect that covers the type of injury in this case. If there is such a policy, the immunity limitations found in Miss.Code Ann. § 11-46-15 (Supp.1998) would be waived to the extent discussed above.
¶ 39. REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
PRATHER, C.J., MILLS, WALLER AND COBB, JJ., CONCUR. BANKS, J., CONCURS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., SMITH, WALLER AND COBB, JJ. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ.
BANKS, Justice, concurring in part:
¶ 40. I agree with the majority insofar as it reverses and remands this case. I write separately because I disagree with the emphasis of its resolution of the insurance issue.
¶ 41. The question whether the purchase of insurance waives the immunity exemptions up to the insurance amount is a matter of statutory construction. While the possible result of a particular construction with respect to the motivation and incentives of legislative bodies may have some effect on that process, it is hardly controlling. Thus, the suggestion that an interpretation that excess coverage waives immunities, including those established by way of specific exemption from the statutorily limited waiver, would be a disincentive for the purchase of insurance should not dictate the result here. I say that even if the statement were not open to debate, which it is.
¶ 42. We must first look to the language of the statute. "Whatever the legislature says in the text of the statute is considered the best evidence of the legislative intent." Pegram v. Bailey, 708 So.2d 1307, 1314 (Miss.1997) (quoting McMillan v. Puckett, 678 So.2d 652, 657 (Miss.1996) (Banks, J., dissenting)). The subsection in question are Miss.Code Ann. § 11-46-17(3) and (4) (Supp.1999). Section 11-46-17 provides generally for funding the tort claims fund through self-insurance or commercial policies. Subsection (3) prescribes the purchase of insurance to cover claims for which the governmental entity "may be liable under this chapter...." The next subsection, 11-46-17(4), provides that a governmental entity "may purchase liability insurance to cover claims in excess of the amounts provided for in Section 11-46-15 and may be sued by anyone in excess of the amounts provided for in Section 11-46-15 to the extent of such insurance carried...." These subsections must be read in the context of the entire statutory scheme. On its face, however, section 11-46-17(4) speaks only of excess, that is amount, rather than substantive waiver. It refers back to, and only to, Section 11-46-15 which provides the monetary limitation of waiver, not the waiver itself.
*1146 ¶ 43. Section 11-46-15 prescribes limitations in the amount of damages allowed for claims "brought under this chapter." Section 11-46-3 provides a blanket immunity from suit to governmental entities and their employees. Section 11-46-5 provides for a waiver of that immunity to the extent of the maximum liability established in Section 11-46-15. Section 11-46-7(1) provides that the remedy provided in this chapter is exclusive "notwithstanding the provisions of any other law to the contrary." Section 11-46-9 provides for exemptions from the waiver of immunity for specific governmental activities. It states explicitly that the entity "shall not be held liable" for claims arising out of the activities there mentioned. Formerly, Section 11-46-16, which stood repealed coterminously with the effective date of Section 11-46-17, provided a blanket waiver of immunity arising out of the purchase of insurance. No similar statute now exists in the chapter.
¶ 44. The conclusion is inescapable, then, that the provision for excess coverage in Section 11-46-17(4) speaks to the limitation on damages rather than whether the entity may be held liable for the substantive claim.
PRATHER, C.J., SMITH, WALLER AND COBB, JJ., JOIN THIS OPINION.
McRAE, Justice, concurring in part and dissenting in part:
¶ 45. I dissent from the majority's conclusion that the purchase of insurance by a governmental entity does not affect potential defenses under Miss.Code Ann. § 11-46-9 (Supp.1999). Where the entity purchases insurance, the majority writes, it does so only to cover claims in excess of the limits set by the Tort Claims Act. The majority reads the Tort Claims Act to say that a sovereign may never waive immunity under the Tort Claims Act. Under this scenario a political entity, even if it desired to do so, cannot provide greater protections for its citizens than those afforded by the Act. I find this conclusion entirely without merit.
¶ 46. When a city or county is benevolent enough to purchase insurance for the protection of itself and potential claimants, the governmental entity should be taken out of the Act altogether, up to the amount of that policy. If an entity chooses to come out from under the protection of the legislatively created umbrella for a "bigger" one provided by an insurance company, the entity and its insurance company should be estopped from claiming any privileges or defenses under the Act, up to the amount of coverage. Consequently, an insurance provider has no right to gain shelter under the very umbrella created by the Act. That right was created for governmental entities and may not be delegated.
¶ 47. Prior to the enactment of the Tort Claims Act, we had no problem finding that a political subdivision, when it purchased liability insurance, waived its immunity up to the amount of insurance. Churchill v. Pearl River Basin Dev. Dist., 619 So.2d 900, 906 (Miss.1993). Once the entity was protected by insurance, it was treated like any other defendant. The insurance company could not claim immunity which is a defense personal to its insured.
¶ 48. When the Legislature, at our insistence,[7] finally addressed sovereign immunity, it merely incorporated our cases holding that the purchase of insurance by a governmental entity waived immunity up to the amount of the policy. There is no reason to think that the Legislature intended to do anything different. It simply took our previous language and said that immunity was waived up to the amount of the insurance. See Miss.Code Ann. § 11-46-17(4) (Supp.1999).
¶ 49. Nor is there any reason to believe that a different decision by us concerning *1147 the purchase of insurance by political subdivisions is likely to open a flood of litigation. The instant case concerns an injury suffered at a public school. Private schools, of which there are many in this state, do not enjoy sovereign immunity for torts occurring on their premises. Yet we do not see a host of lawsuits against the private schools in this state.
¶ 50. In this case, L.W. believes that the McComb Separate School District has an insurance policy with coverage in excess of $500,000. If true, the real party in interest in this case is the insurance company and not the defendant school. The entity's sovereign immunity is waived and cannot be transferred to the insurance carrier. Once the public entity contracts and turns over the responsibility to the insurance company to handle the claims against it, it has waived its immunity up to the policy limits, and the scope and procedure of the act do not apply.
¶ 51. Today's majority opinion misinterprets the waiver statute, and its holding will only serve as a back-page exclusion to the McComb school's insurance policy and any other policy a governmental entity may choose to obtain, essentially telling the entity that, despite the insurance, nothing is waived. In effect, the purpose of purchasing insurance to protect against suit under the Tort Claims Act will now be frustrated.
¶ 52. When a governmental entity contracts and pays an insurance company to provide coverage in the event of a claim, it pays for complete coverage. However, it is not to be considered "extended coverage." The defenses the entity would normally enjoy under the sovereign immunity statute are not placed into the policy. Governmental entities may purchase liability insurance over the limits in the statute and as a result waive their sovereign immunity up to the amount of the policy. Accordingly, when an entity chooses to purchase insurance, the Tort Claims Act is completely inapplicable up to the limits of the policy, and all immunity is waived.
¶ 53. There exists no legitimate explanation for the majority's conclusion that the purchase of insurance by a political subdivision does not waive immunity. Indeed, public policy would appear to demand the opposite result.
¶ 54. Indeed, the majority's opinion is lagniappe for the insurance companies. It provides them with exclusions far better than the ones they have already written into their policies. At the same time, the majority deprives political subdivisions and their citizens of that for which they have already paid. Because I am unable to condone such a great disservice to the people of this state, I dissent from that part of the majority opinion which holds that the purchase of insurance by a governmental subdivision does not waive immunity.
¶ 55. The language and intent of the legislation is clear, concise, and simple. If a political subdivision purchases insurance, sovereign immunity is waived up to the amount of the insurance. Accordingly, I dissent as to this issue, but I join the majority on Issues I and II and in its judgment to reverse and remand.
SULLIVAN AND PITTMAN, P.JJ., JOIN THIS OPINION.
NOTES
[1] Title 11, Chapter 46, Section 1 et seq. is also commonly referred to as the Mississippi Sovereign Immunity Act.
[2] There is no case authority on the subsection (d)'s proper application.
[3] Miss.Code Ann. § 37-13-91 states in pertinent part:

(3) A parent, guardian or custodian of a compulsory-school-age child in this state shall cause the child to enroll in and attend a public school or legitimate nonpublic school for the period of time that the child is of compulsory school age, ....
(5) Any parent, guardian or custodian of a compulsory-school-age child subject to this section who refuses or willfully fails to perform any of the duties imposed upon him or her under this section or who intentionally falsifies any information required to be contained in a certificate of enrollment, shall be guilty of contributing to the neglect of a child and, upon conviction, shall be punished in accordance with Section 97-5-39.
[4] The duty to provide a safe environment is one of ordinary care.
[5] 28 U.S.C. § 2680(a) is the exceptions to waiver of tort immunity under the FTCA, which states:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. (emphasis added).
[6] Miss.Code Ann. § 11-46-15 (Supp.1998) states in pertinent part:

(1) In any claim or suit for damages against a governmental entity or its employee brought under the provisions of this chapter, the liability shall not exceed the following for all claims arising out of a single occurrence for all damages permitted under this chapter:
(a) For claims or causes of action arising from acts or omissions occurring on or after July 1, 1993, but before July 1, 1997, the sum of Fifty Thousand Dollars ($50,000.00).
. . . .
[7] See Pruett v. City of Rosedale, 421 So.2d 1046 (Miss.1982) (abrogating judicially created sovereign immunity).