# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-00640-SCT

**BOLIVAR LEFLORE MEDICAL ALLIANCE, LLP**
**AND PAUL E. WARRINGTON, M.D.**

**v.**

**QUINTON WILLIAMS AND TINA MARIA RAMIZ,**
**HEIRS-AT-LAW AND WRONGFUL DEATH**
**BENEFICIARIES OF CANDIS KENYATTA RAMIZ,**
**DECEASED**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/2005 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JASON EDWARD DARE |
| | L. CARL HAGWOOD |
| ATTORNEY FOR APPELLEES: | ELLIS TURNAGE |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 10/05/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     This interlocutory appeal arises from a medical malpractice complaint filed by plaintiffs Quinton Williams and Tina Maria Ramiz in the Circuit Court of Bolivar County, Mississippi, First Judicial District ("Bolivar circuit"), alleging that the wrongful death of their child, Candis Kenyatta Ramiz ("Candis"), was caused by the medical negligence of defendant Dr. Paul E. Warrington and that his employer, defendant Bolivar Leflore Medical Alliance, LLP ("BLMA"), was vicariously liable. By Order dated May 28, 2004, the Bolivar circuit

granted defendants' motion to transfer venue to the Circuit Court of Leflore County, Mississippi ("Leflore circuit"), finding that BLMA was a "community hospital" entitled to the protections of the Mississippi Tort Claims Act ("MTCA"). However, the Leflore circuit, on a motion for reconsideration, determined that BLMA was not within the statutory definition of a "community hospital" and, as such, the MTCA was inapplicable and venue was improper in Leflore County. From that Order, this interlocutory appeal proceeds. *See* Miss. R. App. P. 5.

## FACTS

¶2.     On May 3, 1996, BLMA was created as a family medical clinic by an agreement between Greenwood Leflore Hospital ("GLH"), Dr. Don Blackwood, and Dr. Paul Warrington. The percentage interest of each was as follows: GLH - 98%; Dr. Blackwood - 1%; Dr. Warrington - 1%. The agreement provided that the distribution of all net income and losses among the individual partners was to proportionately mirror the percentage interest of each.[1] The business affairs of BLMA were to be conducted under the authority and control of an Executive Committee created by the partners. Section 4.01 of the agreement stated, in part:

> [t]he Partners shall create an Executive Committee … as follows: *GLH* shall name *two individual representatives* to the Executive Committee and the *Physician Partners*, acting by majority vote of their Percentage Interests, shall elect *one representative*. ... The Executive Committee shall have *full, exclusive and complete authority, discretion, obligation and responsibility* with respect

---

[1]Section 3.01(b) of the BLMA partnership agreement stated, "[a]ny other distribution of net income by the Partnership to the Partners ... shall be made in such amounts and at such times as shall be determined by the Executive Committee in their absolute discretion, *but any such distribution shall be in the proportion set forth in* [*Schedule*] *A* ... ." (Emphasis added). Section 3.02 of the BLMA partnership agreement provided that, "[e]xcept as otherwise provided herein, Partnership losses shall be allocated to the Partners in the proportion as set forth in [Schedule] A attached hereto ... ."

2

to the *business of the Partnership*.  The Executive Committee shall manage and control the affairs of the Partnership to the best of its ability and shall use all commercially reasonable efforts to carry out the business of the Partnership. The Executive Committee, acting by majority vote of its members, shall have the *sole authority to bind the Partnership by contract*, including mortgages, deeds of trust, promissory notes, or other obligations not inconsistent with the provisions of this Agreement.  The Partners agree that the Partnership shall *not* employ additional physicians or nurse practitioners *nor* shall expenses not directly attributable to Partnership operations be charged to the Partnership without the consent of all Partners.

(Emphasis added).[2]

¶3.    On May 9, 1996, BLMA entered into a physician employment agreement with Dr. Warrington, stating that, "the Partnership desires to employ [Dr. Warrington] to perform the services described in this Agreement *so as to provide health care services to the public*." (Emphasis added).[3]

¶4.    On October 11, 1998, Candis Kenyatta Ramiz ("Candis") was born.  Candis died on August 28, 2000, due to respiratory failure leading to cardiac arrest.  On October 10, 2000, Candis' parents, Quinton Williams and Tina Maria Ramiz ("plaintiffs"), filed a complaint in the

---

[2] Additionally, Section 4.02 of the BLMA partnership agreement provided that, "[t]he Executive Committee shall pay or arrange for the payment of all costs and expenses incurred with respect to the conduct of the Partnership's business ... ."  Furthermore, Section 8.03 of the BLMA partnership agreement stated, "[t]he Executive Committee shall have fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership."

[3] Regarding the provision of health care services to the public, Section 2.4 of the employment agreement stated, "[e]mployee will cooperate in the implementation of any indigent or charitable care policies adopted by the Partnership and will serve Medicaid and Medicare patients in a nondiscriminatory manner."  Section 4 of the agreement provided that Dr. Warrington would be provided with professional liability insurance in the amount "as may be required by the bylaws of either the Bolivar County Hospital or the Greenwood Leflore Hospital medical staffs."

Bolivar circuit[4] against Dr. Warrington and BLMA ("defendants"). Plaintiffs sought monetary damages, alleging that medical negligence during Tina Maria Ramiz's pregnancy with Candis caused Candis's wrongful death.

¶5. Defendants filed their motions, defenses, and answer as "[BLMA], a political subdivision of the State of Mississippi, and its employee, Dr. Paul E. Warrington ... ." They also moved for a transfer of venue to either: (1) the Leflore circuit, arguing that BLMA is entitled to the protections of the MTCA or, alternatively, to (2) the Second Judicial District of Bolivar County,[5] arguing that defendants are residents of the Second Judicial District and the "alleged tortuous acts occurred in the Second Judicial District ... ."

¶6. Plaintiffs filed a response to defendants' motion to transfer venue contending that the venue provisions of the MTCA were inapplicable because, "[a]s a limited liability partnership, BLMA is not a governmental entity within the meaning of the MTCA." In regard to defendants' alternative contention that venue was proper in the Second Judicial District, plaintiffs responded that "[u]nder *McMillan v. Puckett*, 678 So. 2d 652 (Miss. 1996), venue is proper in the judicial district where the death occurred. The official death certificate of [Candis] indicated her death occurred in Rosedale, First Judicial District ... ."[6] However, Candis was

---

[4]The First Judicial District is located in Rosedale, Mississippi.

[5]The Second Judicial District is located in Cleveland, Mississippi.

[6]Moreover, plaintiffs further contended that "[Defendants] did not assert an objection or defense to venue on the ground that [Candis's] death occurred in the Second Judicial District ... not the First Judicial District[,]" and therefore such objection or defense was waived by defendants.

4

not actually pronounced dead until after her arrival at the Bolivar Medical Center in Cleveland, Mississippi.

¶7.    Defendants filed a reply to plaintiffs' response to defendants' motion to transfer venue. Defendants cited **Forrest County General Hosp. v. Conway**, 700 So. 2d 324, 327 (Miss. 1997), in arguing that, for wrongful death actions, venue is proper in both the county of the alleged negligence and the county of the decedent's death.   They also cited **State v. Fabian**, 263 So. 2d 773, 775 (Miss. 1972), for the proposition that "life, like any other condition, continues until there is evidence to the contrary."   As such, they maintained that venue was proper in the Second Judicial District because "[Candis'] life continued until she was pronounced dead at 10:12 p.m. while a patient at the Bolivar Medical Center in Cleveland, Mississippi."

¶8.    On May 28, 2004, an Order granting defendants' motion to transfer venue to the Leflore circuit was entered.   Finding the place of death issue non-dispositive, the Bolivar circuit focused upon the applicability of the MTCA to BLMA.   The Bolivar circuit determined that GLH was "a public community hospital owned jointly by the City of Greenwood and County of Leflore, and a political subdivision of the State of Mississippi, County of Leflore."   Given GLH's 98% interest in the BLMA partnership, the circuit judge concluded that:

> BLMA was established and acquired in majority part by the Board of Trustees of [GLH], and is governed, operated, and maintained in majority part by the Board of Trustees of [GLH].   As such, BLMA was established and acquired by the Board of Trustees of the hospital or by one or more of its owners and is governed, operated, and maintained by the Board of Trustees.   BLMA, therefore, meets the definition of community hospital.   Accordingly, *venue is proper in Leflore County, Mississippi*, the county or judicial district in which the principal offices of the governing body of the political subdivision are located.

5

(Emphasis added).

¶9. In November 2004, defendants filed a motion for partial summary judgment in the Leflore circuit requesting that plaintiffs' complaint, insofar as it sought punitive damages, be dismissed under the MTCA. When plaintiffs filed their response to the motion for partial summary judgment, it was combined with a motion for reconsideration of the May 28, 2004 Order of the Bolivar circuit. Plaintiffs' response contended that BLMA's status as a limited liability partnership precluded the protection defendants sought under the MTCA. Plaintiffs' motion for reconsideration asserted that "[a] successor judge is duty bound to apply the law to the record before the Court, regardless of any prior interlocutory ruling. *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 268-69 (Miss. 1999); *Franklin v. Franklin*, 858 So. 2d 110[,] [1]21 (Miss. 2003)." Plaintiffs maintained then and now, without citation of authority, that "[n]o private ownership interest in a community hospital is permissible under Mississippi law."

¶10. The Leflore circuit granted plaintiffs' motion for reconsideration. Relying upon *Brister v. Leflore County*, 125 So. 816, 818-19 (Miss. 1930), the Leflore circuit found that "control, operation, management and governing of a community hospital must remain in the [B]oard of Trustees." In short, the Leflore circuit found that, "once the partnership created the Executive Committee then the Board of Trustees of [GLH] ceased to govern, operate and maintain the health facility in question and therefore, [BLMA] did not meet the definition of a 'community hospital.'" The Leflore circuit determined that the existence of the Executive

Committee defeated BLMA's status as a community hospital. Therefore, BLMA was not entitled to the protection of the MTCA.[7] From that ruling comes this appeal.[8]

## ISSUES

¶11. The following issues were raised on appeal:

(1) Whether the "law of the case" doctrine should be applied to the May 28, 2004 Order of the Bolivar circuit?
(2) Whether BLMA is entitled to the protections, limitations and immunities of the MTCA?
(3) Whether defendants waived any objection or defense to venue in the Bolivar circuit?

This Court will consider only issue (2), as it is dispositive. Addressing the divergent findings of the Bolivar circuit and the Leflore circuit on whether BLMA was entitled to the protections, limitations and immunities of the MTCA resolves this controversy, mooting issues (1) and (3).

## STANDARD OF REVIEW

¶12. "The pertinent issues here are questions of law. Our standard of review is de novo in passing on questions of law." *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 945 (Miss. 2000) (citations omitted).

## ANALYSIS

---

[7]Specifically, the Leflore circuit found that:

such delegation by the Board of Trustees to the Executive Committee was far beyond the 'reasonable authority' under Section 41-13-35(2) MCA; further, as the Board of Trustees failed to place reviews upon the actions of the Executive Committee or any person the Committee delegated authority to, the Board of Trustees failed to review such actions as provided by Section 41-13-35(2) MCA.

[8]The Leflore circuit determined that, "[BLMA's] Motion for Partial Summary Judgment is held in abeyance pending the outcome of the interlocutory appeal decision."

7

**Whether BLMA is entitled to the protections, limitations and immunities of the MTCA?**

¶13.     The MTCA:

> 'provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit.' ***L.W. v. McComb Separate Mun. Sch. Dist.***, 754 So. 2d 1136, 1138 (Miss. 1999); *see* Miss. Code Ann. § 11-46-7(1) (2002).    'Any tort claim filed against a government entity or its employee shall be brought only under the MTCA.' ***L.W.***, 754 So. 2d at 1138.    'The MTCA waives sovereign immunity from claims for money damages arising out of the torts of governmental entities and their employees.' ***Id***.     Moreover, 'no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties.' Miss. Code Ann. § 11-46-7(2). ...
> The MTCA makes the State responsible for the negligence of its employees at a financial level the legislature has determined to be reasonable.

***Watts v. Tsang***, 828 So. 2d 785, 791 (Miss. 2002).

¶14.     The limited liability provisions of the MTCA extend to "a governmental entity or its employee."    Miss. Code Ann. Section 11-46-15.    A "governmental entity" is defined as "the state *and political subdivisions* as herein defined."    Miss. Code Ann. Section 11-46-1(g) (emphasis added).    A "political subdivision" is defined, in part, as:

> any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any ... *community hospital* as defined in Section 41-13-10, Mississippi Code of 1972 ... *or other instrumentality thereof*, whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name.

Miss. Code Ann. Section 11-46-1(I) (emphasis added).    This Court has found that a "private corporate entity" which is "responsible for governmental activities" may properly be regarded as a "political subdivision" under Miss. Code Ann. Section 11-46-1(I).    ***Watts***, 828 So. 2d at 793 (involving University Anesthesia Services, PLLC ("UAS"), a University of Mississippi

8

Medical Center ("UMMC") medical practice group). *See also **Mozingo v. Scharf***, 828 So. 2d 1246, 1254-55 (Miss. 2002) ("providing patients with medical services is a statutorily established activity that UMMC has been mandated to provide by the Mississippi Legislature. ... By providing clinical patient services, UAS is carrying out state governmental activities on behalf of UMMC. Therefore, UAS falls squarely within the definition of a political subdivision.").

¶15.   A "community hospital" is defined as "any hospital, nursing home and/or related health facilities or programs ... established and acquired by *boards of trustees or* by one or more *owners* which is *governed, operated and maintained by a board of trustees*." Miss. Code Ann. Section 41-13-10(c) (emphasis added).[9]   This Court has held that "community hospitals" are forms of "municipal corporation[s]." *See **Enroth v. Mem'l Hosp. at Gulfport***, 566 So. 2d 202, 206 (Miss. 1990) (for statute of limitations purposes under Article 4, Section 104 of the Mississippi Constitution and Miss. Code Ann. Section 15-1-51).   In ***Brister v. Leflore County***, 156 Miss. 240, 125 So. 816, 817 (1930), this Court dealt with the issue of "whether a hospital

---

[9]"Board of trustees" is defined as "the board appointed pursuant to Section 41-13-29, to operate a community hospital." Miss. Code Ann. Section 41-13-10(b). Miss. Code Ann. Section 41-13-29(1) states, "[t]he owners are hereby authorized to appoint trustees for the purpose of *operating and governing community hospitals*." (Emphasis added). "Owner" is defined as:

> any board of supervisors of any county having an ownership interest in any community hospital or leased facility on behalf of the county or on behalf of any supervisors district, judicial district or election district of the county and shall also mean any governing council or board of any municipality having an ownership interest in any community hospital or leased facility.

Miss. Code Ann. Section 41-13-10(d).

corporation is a public or private corporation ... ." Amidst that discussion, this Court laid out the following principles:

> '[p]ublic corporations are the instrumentalities of the state [or of a subdivision thereof], founded and owned by it in the public interest, supported [in whole or in part] by public funds, and governed by managers deriving their authority from the state [or from a subdivision thereof].' [quoting ***Van Campen v. Olean General Hospital***, 210 App. Div. 204, 205 N.Y.S. 554, 555 (N.Y.A.D., 4 Dept. 1924).] And this is in effect the definition laid down in ***State v. V. & N. R. Co.***, 51 Miss. [361], 368 [1875]. … 'A corporation therefore is not a public corporation merely because it is founded for a public charity. ... While an institution founded ... for purposes of general charity such as a hospital for the poor, the sick, the disabled or the insane may well be regarded as a public institution yet in the sense of the law a far more limited, as well as a more exact, meaning is intended by a public institution or corporation.' 14 C. J. p. 73; 7 R. C. L. pp. 39, 40.

125 So. at 817-18. The "ultimate test" for determining whether a hospital corporation is public or private involves whether "its continuity, and its control and management, [are] under the power of the public through public agents who are responsibly accountable to the government? ... [T]he arrangement [must] be such that the *majority control* shall remain in the *public through responsible public agents or managers ... . **Id**.* at 818-19 (emphasis added). *See also **Trustees of the Aberdeen Female Academy v. Mayor and Aldermen of Aberdeen***, 21 Miss. (13 S. & M.) 645 (1850) (quoting ***Bailey v. Mayor of New York***, 3 Hill, 539) ("[r]egard should be had, not so much to the nature and character of the various powers conferred, as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, municipal, or political character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, as to this, is to be regarded as a private company.").

¶16.   An instrumentality is defined as "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body."   Webster's Third New International Dictionary 1172 (3rd ed. 1986).   In *Watts*, this Court concluded that "UAS meets the definition of 'State' because it is an instrumentality of UMMC, a state teaching hospital[,]" although this Court placed limitations on its holding, stating:

> we are *not* holding that all medical practice groups are per se instrumentalities of the State.   However, where as here the medical practice group was created by UMMC, and is overseen by UMMC, and the purpose is to supplement the income of its faculty; when the day-to-day oversight is left to the department chair, subject to limited oversight by the vice chancellor, and its membership is composed solely of full-time UMMC faculty-physicians; where the faculty-physicians can only practice at UMMC approved sites, and the money is distributed on a point system based on factors other than mere patient service, we must conclude that the medical practice group is a State entity.

828 So. 2d at 793-94.

¶17.   In comparing UAS and BLMA, this Court finds remarkable similarities.   Just as UAS was created and overseen by UMMC, *see id*., BLMA was created and is overseen by GLH. Specifically, GLH appoints two-thirds (2/3) of the Executive Committee which oversees and controls the business affairs of BLMA, and maintains a 98% interest in the income and losses of BLMA.   Furthermore, just as UAS physicians could "only practice at UMMC approved sites," *id*., Dr. Warrington was contractually required to provide services exclusively for GLH or the partnership and, should he leave the partnership, was excluded from providing medical

11

services in the area by a covenant not to compete contained within his employment agreement.[10]

¶18. The precise issue before this Court is whether BLMA is entitled to the protections, limitations and immunities of the MTCA as either a "community hospital" or as an "instrumentality thereof?" If "yes," venue is proper in Leflore County. If "no," then venue was improperly transferred from Bolivar County.

¶19. Defendants first argue that GLH, as a "community hospital," was statutorily empowered to enter into a limited liability partnership with Dr. Warrington and Dr. Blackwood. According to defendants:

> GLH's mission under Miss. Code Ann. Section 41-13-10 *et seq* is to provide health care services to the public. It is not possible for the hospital to do so in all of its designated service area, especially in remote areas in the Delta of Mississippi, when the hospital is working alone. Accordingly, the drafters of Section 41-13-35 intended to allow community hospitals to fulfill their mission

---

[10]Section 15.1 of the agreement provided that Dr. Warrington:

agrees that, unless otherwise agreed in writing by Partnership, during the term of this Agreement and continuing until the end of twelve (12) months following termination of his employment resulting from ... termination by Partnership for cause pursuant to Section 8.4, Employee shall not enter negotiations for any physician service contracts or directly or indirectly provide physician services at any location within a seventy-five (75) mile radius of Cleveland, Mississippi, except for services performed hereunder by Employee acting solely as the Employee of Partnership during the term of this Agreement and except for hospital emergency room services. For purposes of this Article 15, prohibited 'negotiations' by Employee shall include the direct or indirect discussions of exclusive or nonexclusive contractual agreements for the delivery of professional medical services to patients, either as an individual or as a partner, employee, officer, director, or shareholder of any legal entity other than Greenwood Leflore Hospital or the Partnership.

12

'independently or jointly with other entities or individuals.' [*See*] 2004 Miss. Att'y Gen. 0175.[11]

Specifically, defendants maintain that Miss. Code Ann. Sections 41-13-35(5)(m-n) permit GLH to contract with private physicians in providing health care services to the public. Miss. Code Ann. Sections 41-13-35(5)(m-n) provide:

> (5) The power of the board of trustees shall specifically include, but not be limited to, the following authority: ...
> (m) To offer the following inpatient and outpatient services, after complying with applicable health planning, licensure statutes and regulations, whether or not heretofore offered by such hospital or other similar hospitals in this state and whether or not heretofore authorized to be offered, long-term care, extended care, home care, after-hours clinic services, ambulatory surgical clinic services, preventative health care services including wellness services, health education, rehabilitation and diagnostic and treatment services ... and to promote, develop and institute *any other services* having an appropriate place in the operation of a hospital offering complete community health care;
> (n) To *promote, develop, acquire, operate and maintain* on a *nonprofit* basis, *or* on a *profit* basis *if* the community hospital's share of profits is used *solely* for community hospital and related purposes in accordance with this chapter, *either separately or jointly* with one or more other hospitals *or health-related organizations*, facilities and equipment for providing goods, services and programs for hospitals, other health care providers, and other persons or entities in need of such goods, services and programs and, in doing so, to provide for contracts of employment or contracts for services and ownership of property on terms that will protect the public interest ... .

---

[11]Note that 1985 Miss. Laws ch. 511, Section 1, applicable to Miss. Code Ann. Section 41-13-10 *et seq.* and effective from and after July 1, 1985, states:

> [i]t is the intent and purpose of this act to *clarify and expand the power of boards of trustees of community hospitals so as to* allow such community hospitals to *operate efficiently*, to *offer competitive health care services*, to *respond more effectively* to new developments and regulatory changes in the health care area and to *continue to serve and promote the health and welfare of the citizens of the State of Mississippi.* This act shall be *liberally construed* so as to give effect to such intent and purpose.

(Emphasis added).

Miss. Code Ann. Sections 41-13-35(5)(m-n) (emphasis added).

¶20. Next, defendants contend that BLMA may properly be viewed as either a "community hospital" or an "instrumentality" of GLH and, as such, should be clothed with MTCA protection.

¶21. Defendants argue, "BLMA was acquired by the Board of Trustees [of GLH] in the interest of providing health care services to the public. It is maintained in majority part (i.e. - 98%) with public funds from GLH and is managed in majority part (i.e. two-thirds; 2/3) by an Executive Committee deriving its authority from GLH." As such, defendants maintain that "[i]n all aspects of its existence, BLMA meets, if not exceeds, the definition of a 'public corporation.'" Defendants cite *Allstadt v. Baptist Mem'l Hosp.*, 893 So. 2d 1083, 1087 (Miss. Ct. App. 2005), for the proposition that "[a] state entity does not lose its status under the [MTCA] by merely contracting with a private entity." In *Allstadt*, the Board of Trustees of the Tippah County Hospital entered into a contract with Baptist Memorial Regional Health Care Corporation ("BMRHCC") "to provide management and consultation in the operation of the hospital. The agreement stated in part that BMRHCC would have the authority and responsibility to conduct, supervise, and manage the day-to-day operations of the hospital." *Id*. at 1084. That agreement was later modified "to state that BMRHCC would provide consulting services as requested by the Board of Trustees regarding the day-to-day operations of the hospital." *Id*. at 1084-85. In finding that contracting with BMRHCC did not relinquish Tippah County Hospital's status as a state entity, subject to the MTCA, the Mississippi Court of Appeals stated:

14

[d]espite the language in the contract, Tippah County retained ultimate control over the operation of the hospital and management decisions through its board of trustees and continued to own its property. Tippah County was the sole source of capital needed to operate the hospital, and such capital was supplied from accounts in the name of the board of trustees of the hospital. Tippah County maintained insurance coverage regarding all aspects of the hospital's operation. The county was also responsible for all employees' salaries, including the hospital administrator, who was specifically listed as an employee of Tippah County Hospital.

*Id.* at 1086.

¶22. Plaintiffs reply that "[t]o make the corporation a public one, its managers, whether trustees or directors, must be not only appointed by public authority, but subject to its control." They contend that because BLMA is a limited liability partnership, administered by an Executive Committee which includes a member appointed by private citizens (the "Physician Partners"), then "[t]he members of the executive committee are not public officers."[12] Moreover, they finally assert that "Miss. Code Ann. Section 41-13-10(d) limits ownership in a community hospital to a board of supervisors, a supervisors district, judicial district, election district or the governing council or board of any municipality."[13] As a result, they maintain that:

[p]hysicians who engage in private practice cannot acquire MTCA immunity for their private practice by the formation of a limited liability partnership jointly owned by the individual doctors and a community hospital. A limited liability partnership is not a public governmental entity. BLMA, as composed and administered, is not a community hospital.

_____

[12]Plaintiffs incorrectly assert that "BLMA is a limited liability partnership administered by a five (5) member executive committee of which two (2) members (40%) are appointed by private citizens." In fact, the three (3) member Executive Committee includes one (1) member (one-third; 1/3) appointed by the "Physician Partners."

[13]*See* footnote 9 for the text of Miss. Code Ann. Section 41-13-10(d).

15

¶23. This Court finds that Miss. Code Ann. Section 41-13-35(5)(n) statutorily empowered GLH to contract with Dr. Warrington and Dr. Blackwood in the general interest of "serv[ing] and promot[ing] the health and welfare of the citizens of the State of Mississippi." 1985 Miss. Laws ch. 511, Section 1. Furthermore, this Court adopts the holding in *Allstadt* that, "[a] state entity does not lose its status under the [MTCA] by merely contracting with a private entity." 893 So. 2d at 1087.

¶24. However, the Leflore circuit is correct in its analysis that BLMA fails to meet the statutory definition of a "community hospital." A community hospital is statutorily required to be "governed, operated and maintained by a board of trustees." Miss. Code Ann. Section 41-13-10(c). The business affairs of BLMA are "manage[d] and control[led]" by the Executive Committee. That Executive Committee is composed of two representatives appointed by GLH and one representative appointed by the "Physicians Partners." While GLH, as a "community hospital" itself,[14] is "governed, operated and maintained by a board of trustees," that is not the case with the "Physicians Partners." Since those "Physician Partners" have one-third (1/3) appointment power with respect to the Executive Committee controlling BLMA, it cannot be said it is "governed, operated and maintained by a board of trustees" as required by Miss. Code Ann. 41-13-10(c) for a "community hospital." Although the Leflore circuit was correct in finding that BLMA was not a "community hospital," our inquiry does not end.

¶25. Defendants alternatively contend BLMA is an "instrumentality" of GLH, the "intermediary or agent through which" functions of GLH "are carried out." Since GLH is a

---

[14]The Bolivar circuit found GLH was a "community hospital," and plaintiffs acknowledge GLH is a "community hospital."

"community hospital" and maintains 98% interest in the income and losses of BLMA and two-thirds (2/3) control over the Executive Committee membership of BLMA, they persuasively argue that BLMA functionally operates as an "instrumentality" of GLH. "As an instrumentality of GLH, created to assist GLH in performing its legitimate purpose of providing health care services to the public, BLMA is a 'political subdivision' as defined by Section 11-46-1(I), and accordingly is entitled to the protections, limitations and immunities of the MTCA."

¶26. Plaintiffs counter that the power ceded by GLH's Board of Trustees to the "Physician Partners" negates any applicability of the MTCA, as BLMA is not truly an "instrumentality" of GLH. They rely upon the language of Miss. Code Ann. Section 41-13-35(2), which states:

> [t]he *board of trustees* shall have *full authority* to select from its members, officers and committees and, by resolution or through the board bylaws, to *delegate* to such officers and committees reasonable authority to carry out and enforce the powers and duties of the board of trustees during the interim periods between regular meetings of the board of trustees; provided, however, that any such action taken by an officer or committee shall be subject to review by the board, and actions may be withdrawn or nullified at the next subsequent meeting of the board of trustees if the action is in excess of delegated authority.

Miss. Code Ann. Section 41-13-35(2). Plaintiffs insist that since the GLH's Board of Trustees does not retain "full authority" in the delegation of power to the Executive Committee, BLMA is not an "instrumentality" of GLH.

¶27. Defendants respond that "[t]he Executive Committee was created by GLH pursuant to ... Miss. Code Ann. Section 41-13-35(5)(g), and was intended to 'manage the business' of BLMA, including ensuring payment of all costs of BLMA [*see* Partnership Agreement Section

4.02].”[15]   Moreover, they maintain that the Executive Committee had no power to carry out GLH's duties or bind GLH in any contract.  In their estimation:

> [j]ust as the Board of Trustees cannot bind the city counsel or board of supervisors who appointed them, the Executive Committee of BLMA cannot bind GLH, but only BLMA.  The Executive Committees' authority is limited in scope to the four-corners of the BLMA Partnership Agreement, and they have no authority to 'employ additional physicians or nurse practitioners' or incur 'expenses not directly attributable to [BLMA] operations ... .' [*see* Partnership Agreement Section 4.01].

As such, they argue that BLMA is merely an "instrumentality" of GLH.

¶28.   This Court finds that the legislative intent and purpose of liberal construal are best supported by the latter argument and underlying facts.  Finding such, we hold that BLMA is an "instrumentality" of GLH.  It is uncontested that GLH is a "community hospital."  GLH has nearly total interest in the income and losses of BLMA (i.e. 98%) and majority control over BLMA's Executive Committee membership (i.e. two-thirds; 2/3).  Such control clearly qualifies BLMA as an intermediary or agent through which certain functions of GLH are accomplished.  Therefore, this Court conclusively finds that BLMA is an "instrumentality" of GLH.  As an "instrumentality," BLMA is entitled to the protections, limitations and immunities

---

[15]Miss. Code Ann. Section 41-13-35(5)(g) provides:

[t]he power of the board of trustees shall specifically include, but not be limited to, the following authority: ...
(g) To contract by way of lease, lease-purchase or otherwise, with any agency, department or other office of government *or any individual, partnership, corporation, owner, other board of trustees, or other health care facility*, for the providing of property, equipment or *services* by or to the community hospital or other entity or regarding any facet of the construction, management, funding or operation of the community hospital *or any division or department thereof*, or any related activity ... .

Miss. Code Ann. Section 41-13-35(5)(g).

of the MTCA. *See* Miss. Code Ann. Section 11-46-15. Accordingly, venue is proper in the Circuit Court of Leflore County.

## CONCLUSION

¶29. For these reasons, the Order of the Circuit Court of Leflore County is reversed, and this action is remanded to that court for further proceedings in accordance with this opinion.

¶30. **REVERSED AND REMANDED**.

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. COBB, P.J., CONCURS IN PART AND IN RESULT. DIAZ AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**