# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00892-COA

**PEARL RIVER COUNTY, MISSISSIPPI**                          **APPELLANT**

v.

**JANICE BETHEA, JAKE BENEFIELD, A**                          **APPELLEES**
**MINOR, BY AND THROUGH HIS MOTHER**
**AND NEXT FRIEND, CHRISTINE BENEFIELD,**
**GABRIELLE BENEFIELD, A MINOR, BY AND**
**THROUGH HER MOTHER AND NEXT FRIEND**
**CHRISTINE BENEFIELD, AND CHRISTINE**
**BENEFIELD, INDIVIDUALLY**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/03/2014 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDWARD C. TAYLOR |
| | KRISTI ROGERS BROWN |
| | CHRISTOPHER H. MURRAY |
| ATTORNEYS FOR APPELLEES: | JAMES K. DUKES |
| | SETH M. HUNTER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | FOUND THAT APPELLANT WAS LIABLE AND IMMUNITY UNDER THE MISSISSIPPI TORT CLAIMS ACT DID NOT ATTACH; AWARDED APPELLEES DAMAGES |
| DISPOSITION: | AFFIRMED - 12/01/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE, AND FAIR, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In December 2010, while on duty with the Pearl River County Sheriff's Department,

Deputy Joshua J. English was involved in a car crash in Poplarville, Mississippi, due to brake

issues in English's vehicle. The vehicle with which he collided contained Janice Bethea, Jake Benefield, Gabrielle Benefield, and Christine Benefield. As a result of the crash, Bethea and the Benefields suffered personal-injury and property damages. They soon filed suit in the Pearl River County Circuit Court against English through his employer, Pearl River County. At trial, Pearl River County asserted immunity through the Mississippi Tort Claims Act (MTCA). The trial judge found that immunity did not attach to Pearl River County because English acted in reckless disregard for the safety of others by continuing to drive a vehicle that had been signaling that there were brake problems for several weeks and failing to properly resolve the brake issues. Aggrieved, Pearl River County appeals. Finding no error, we affirm.

### STATEMENT OF FACTS

¶2. On December 13, 2010, English was driving his patrol vehicle in Poplarville while on assignment with the sheriff's department. English had traveled the route many times and was familiar with the area. On an approach to a stop sign, English pressed the vehicle's brakes to initiate a stop. However, English testified that his brakes failed, causing him to run through the stop sign.

¶3. Bethea and the Benefields were traveling in the area on that day. They too approached the same stop sign coming from a perpendicular direction. They stopped, then continued through the intersection. As they passed through the intersection, English collided with their vehicle while traveling approximately forty miles per hour, causing substantial damage.

¶4. The record reflects that the brake-warning light in English's vehicle had been on for

2

several weeks prior to the accident, indicating that there was a problem with the vehicle's braking system. Inmates at the Pearl River County Jail who had automotive experience inspected the vehicle in a mechanic shop maintained by Pearl River County. The inmates could not find anything wrong with the brakes. Nonetheless, the brake-warning light remained lit. The sheriff's department asserted that one of its policies requires "vehicle-maintenance forms" to be completed when work is done on patrol cars. However, the sheriff's department was unable to locate or produce any vehicle-maintenance forms for the vehicle in question, including any documentation relating to the brake-warning-light issue. Regardless, English continued to drive the vehicle with the brake-warning light on.

¶5. Deputy Justin Farmer testified that he checked the brakes on the vehicle after the accident and that the brake pedal was depressed all the way to the floor, indicating that the brakes were not functioning properly following the accident. An accident reconstructionist who investigated the scene noted a lack of skid marks on the road from English's vehicle. This, the reconstructionist testified, showed that neither the regular brakes nor the emergency brake in English's vehicle was in use immediately prior to the collision.

¶6. During the bench trial on the matter, Bethea and the Benefields pointed out that English was not wearing a seatbelt and did not have a valid driver's license at the time of the accident. They also emphasized that English was issued a traffic citation following the accident for his failure to yield the right of way. While these factors were mentioned in support of their argument that English acted recklessly, the trial centered on whether English acted in reckless disregard for the safety of others by driving his patrol vehicle with the

brake-warning light on.

¶7. At trial, Bethea and the Benefields asserted that it was improper to allow inmates to inspect the vehicle instead of a private mechanic. However, information surrounding the inmates' work on the vehicle was limited. Although vehicle-maintenance forms were required to be completed after work on patrol vehicles was performed, there was no documentation at all on the subject vehicle with regard to maintenance. Either the forms had not been completed or the forms had been destroyed. The lack of information regarding the vehicle's inner workings continued with the vehicle's black box. Although the sheriff's department was aware of the litigation surrounding the accident, the black box was also destroyed before anyone associated with Bethea and the Benefields could inspect it.

¶8. After the close of the bench trial, the trial judge issued his ruling. In his order, the trial judge acknowledged that a formal request for the maintenance records and the black box was not made until well after suit had been filed. However, an expert retained by Bethea and the Benefields contacted the sheriff's department within a week of the incident and indicated his intent to download the black box's data. Additionally, Bethea and the Benefields timely filed notice of their claim under the MTCA nine months after the accident occurred. Hence, the trial judge determined that Pearl River County should have protected the black box and any maintenance records from destruction. Accordingly, the trial judge applied a negative inference of spoliation of evidence against Pearl River County.

¶9. The trial judge went on to find that English had acted in reckless disregard for the safety of others. The trial judge determined that because the brake-warning light in the patrol

4

vehicle remained lit even after having been inspected, English was on notice that something was still wrong with the braking system. As such, English "intentionally elected to continue to drive and operate a motor vehicle that was signaling to its operator that 'something' was wrong somewhere in the vehicle's braking system." Furthermore, the trial judge noted that since English knew that his vehicle had brake issues, he failed to act accordingly "by slowing down sufficiently far enough away from the known stop sign so as to allow his vehicle to come to a stop or to slow substantially down prior to entering into the intersection." Ultimately, the trial judge found in favor of Bethea and the Benefields. Pearl River County appeals.

## STANDARD OF REVIEW

¶10. It is well settled that the findings of a circuit judge, sitting without a jury, "are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *Mayor & Bd. of Aldermen, City of Ocean Springs v. Homebuilders Ass'n of Miss. Inc.*, 932 So. 2d 44, 48 (¶6) (Miss. 2006) (citation and quotation omitted). This Court will not disturb the findings of a chancellor when the findings are supported by substantial evidence unless the chancellor was clearly erroneous, was manifestly wrong, or applied an erroneous legal standard. *City of Jackson v. Perry*, 764 So. 2d 373, 376 (¶9) (Miss. 2000) (citation omitted).

## DISCUSSION

¶11. On appeal, Pearl River County asserts that the trial judge improperly found that English acted in reckless disregard and that immunity should have attached under the MTCA. Pearl River County also claims that the trial judge erred by finding a negative inference of

5

spoliation of evidence.

## I.    MTCA Immunity

¶12.    Suits against a municipality are brought under the MTCA. Miss. Code Ann. § 11-46-1 to -23 (Rev. 2012 & Supp. 2015). In order for a municipality to waive governmental immunity from suit, the state actor in question or its employee must be found to have "acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c) (Supp. 2015). The Mississippi Supreme Court has defined "reckless disregard" when used in motor-vehicle cases as:

> [T]he voluntary wrongful doing by [a] motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such an act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of [a] chance of [an] accident happening without intent that any occur.

*Maldonado v. Kelly*, 768 So. 2d 906, 909 (¶8) (Miss. 2000) (citation omitted).

¶13.    Here, the trial judge determined that several factors contributed to a finding that English acted in reckless disregard of the safety of others in this case. As stated earlier, English's brake-warning light had been on for several weeks prior to the accident. The record indicates that English took the vehicle to a mechanic shop maintained by Pearl River County where inmates with automotive experience worked on vehicles owned by Pearl River County. English testified that the inmates inspected the vehicle but could find nothing wrong with the brakes. Nonetheless, the brake-warning light remained lit. English continued driving the vehicle with the brake-warning light on until the subsequent accident.

6

Furthermore, the record reflects that as English was nearing the stop sign in question, he was driving at a rate of forty miles an hour and had not attempted to slow the vehicle naturally prior to depressing the brake pedal. The record further shows that the emergency brake in the vehicle had not been utilized prior to impact.

¶14. The trial judge noted all of these factors in his final order. The trial judge additionally discussed the fact that English had not been wearing a seatbelt and did not have a valid driver's license at the time of the accident. The trial judge also mentioned the traffic violation English received as a result of his running the stop sign. Pearl River County challenges the trial judge's consideration of these factors in his final opinion. We fail to see how these factors are relevant to the question of whether or not English acted with reckless disregard for the safety of others. His failure to wear a seatbelt and his continued driving for several weeks with an expired license do not contribute to a showing that English was acting recklessly at the time of the accident or in the weeks leading up to the accident. These were mere technical violations, which we do not find contributed to the accident.

¶15. Additionally, it is undisputed by both parties that English's failure to yield the right of way at the intersection was the result of brake failure. The vehicle's brake issues are at the center of the argument over whether reckless disregard was involved in the accident. Indeed, the bulk of the trial judge's opinion focuses on the brake-warning-light issue – an issue which we also regard as pivotal. As such, while we see no probative value in the trial court's consideration of the aforementioned factors, we find any error to be harmless at most.

¶16. With respect to the brake-warning-light issue, Pearl River County asserts that the trial

7

judge erred by finding that an inspection of the vehicle's brake system by inmates at Pearl River County's mechanic shop was improper and that English knowingly drove his vehicle on public streets with defective brakes. Specifically, the trial judge questioned the expertise and knowledge of the inmates working on the vehicle and insisted that "[patrol] vehicles be maintained with great diligence and by competent mechanics and technicians."

¶17.    We acknowledge that it is common practice for inmates with particular skills to utilize those skills while incarcerated. We see no harm in allowing inmates with knowledge and experience in auto mechanics to perform basic and routine maintenance of vehicles. Here, however, the problem in English's vehicle was not routine. A problem in a vehicle's braking system is a serious issue. This is particularly so when, as stated by the trial judge, it is commonplace "for a police motor vehicle to be involved in high[-]speed chases or other high[-]risk situations where it is critical to the safety and well being of the motor[-]vehicle operator and the innocent citizenry at large that these vehicle be maintained with great diligence . . . ."

¶18.    Even if the braking issue at hand were considered routine maintenance and, therefore, within the scope of work of the inmates, the fact that the brake-warning light remained on despite the inmates' insistence that there was not a brake issue indicates that the problem was not resolved. If the inmates could not identify why the brake-warning light was on, the vehicle should have been sent to a mechanic's shop employing either more highly skilled workers or more technically advanced equipment that could identify the problem and implement a solution. The vehicle should not have been released back into commission with

8

the system continuing to indicate a brake problem.

¶19.    In that vein, English, being aware that the brake-warning light was still on in the vehicle during the weeks leading up to the accident, should not have continued driving the vehicle in a professional capacity.  As correctly stated by the trial judge, it is not uncommon for patrol vehicles to become engaged in pursuits or circumstances requiring high speeds.  Hence, a patrol vehicle's braking system is of particular importance.  We agree that it was reckless of English to drive a patrol vehicle that he knew was signaling a problem with its brakes.

¶20.    Additionally, while English was not involved in a high-speed venture at the time of the incident, he was, nonetheless, rapidly approaching a stop sign of which he was well aware and in a vehicle that continued to signal brake issues.  As stated by the trial judge:

> [A] reasonably prudent person approaching an intersection where he knows there is a stop sign does not maintain a speed of [forty] miles per hour until the moment he arrives at the stop sign.  A reasonably prudent person begins to slow down or start applying the brakes some distance prior to reaching the point where the vehicle has to cease all forward movement.

¶21.    Pearl River County attacks the trial judge's use of the words "reasonably prudent person" as an improper standard of care applied to English.  We agree that the words "reasonably prudent person" are usually applied in general-negligence actions.  However, in this case, the trial judge properly cited the reckless-disregard standard of care and consistently analyzed the case under that elevated standard throughout the opinion.  We find that the trial judge's use of the words "reasonably prudent person" here was not reflective of a legal standard applied to the case.  Rather, it would appear that the trial judge simply

9

used these words descriptively to emphasize a point.

¶22.   While we would not have utilized the words "reasonably prudent person" in the subject analysis, we do, however, follow the trial judge's reasoning.  English knew that his patrol vehicle was signaling to him that his brakes were malfunctioning in some way.  Knowing that fact, he should not have been driving the vehicle.  Even setting the brake-light issue aside, English should have acted with more caution when approaching the stop sign in question.  The trial judge's commentary had merit in that it was reckless of English to approach the stop sign in question so quickly and without attempting to naturally slow down the vehicle before applying the brakes.  This is particularly valid when factoring in the vehicle's brake issues.

¶23.   As noted previously, a trial judge's findings will only be reversed when the trial judge applied an erroneous legal standard or the findings "are manifestly wrong [or] clearly erroneous."  *City of Jackson*, 764 So. 2d at 376 (¶9) (citation omitted).  The opinion of a trial judge sitting without a jury will be upheld as long as it is "supported by substantial, credible, and reasonable evidence."  *Mayor & Bd. of Aldermen, City of Ocean Springs*, 932 So. 2d at 48 (¶6) (citation and quotation omitted).  When considering the aforementioned points cumulatively – the brake-warning light remaining on even after inspection, English's continued driving of the vehicle for several weeks with the brake-warning light on, and English's rapid approach to the stop sign in a vehicle with brake issues – we simply cannot find error in the trial judge's ruling.  We find that the record contains ample evidence to support the trial judge's findings.  This issue is without merit.

10

## II.    Spoliation of Evidence

¶24.    We have previously held that "[w]hen evidence is lost or destroyed by one party (the 'spoliator'), thus hindering the other party's ability to prove his case, a presumption is raised that the missing evidence would have been unfavorable to the party responsible for its loss." *Young v. Univ. of Miss. Med. Ctr.*, 914 So. 2d 1272, 1277 (¶19) (Miss. Ct. App. 2005) (quoting *Thomas v. Isle of Capri Casino*, 781 So. 2d 125, 133 (¶37) (Miss. 2001)).  We further stated that "[a] finding of spoliation may be supported by intentional *or negligent destruction* of evidence by the spoliator. . . . [T]he presumption of unfavorability created by a finding of spoliation allows the fact-finder to draw a general negative inference from the fact of spoliation." *Id*. (emphasis added and citations omitted).

¶25.    Here, Pearl River County incorrectly asserts that in order for a negative inference of spoliation to be inferred the trial judge must have found that the spoliator acted intentionally.  However, as stated above, negligent destruction of evidence is also grounds for a finding of spoliation.  Pearl River County admits that the vehicle's maintenance records and black box were destroyed before the expert hired by Bethea and the Benefields could examine them.  The supreme court addressed negligent spoliation of evidence in *Thomas*, 781 So. 2d at 133 (¶38), where evidence was destroyed by the Isle of Capri Casino but the casino maintained that it was unexplainable and not deliberate.  The supreme court stated:

> The Isle [of Capri Casino] . . . argue[s] that the negative presumption raised by spoliation "may only be drawn when the destruction is unexplained or deliberate."  However, the information [in question] was not lost by [an] act of God or in a fire, but was destroyed by the actions of the Isle [of Capri Casino] . . . when . . . [it] was aware of the pending dispute.

*Id.* The same is true here. The maintenance records and the black box were destroyed by Pearl River County – though perhaps merely by negligence – with knowledge of the pending dispute.

¶26. Pearl River County, however, argues that Bethea and the Benefields did not make a formal request to review the maintenance records and black box until well after the lawsuit had been filed. The trial judge acknowledged this fact, but found "that the evidence supports a finding that [Pearl River County was] more than aware that [Bethea and the Benefields] had attorneys involved and [were] investigating the vehicle accident before the vehicle, the maintenance records, and the black box were destroyed or disposed of." Nonetheless, Pearl River County asserts that the trial judge improperly considered the testimony of an expert witness who indicated that attorneys for both parties had discussed the need for him to review the maintenance records and the black box, thereby informing Pearl River County months prior to the formal notice. Pearl River County claims that the testimony in question was inadmissible hearsay.

¶27. Whether or not the testimony at hand was permissible is moot. There was ample evidence outside of the testimony in question that supports Bethea and the Benefields' position that Pearl River County was aware of pending litigation and should not have allowed the maintenance records and the black box to be destroyed. The expert witness also testified that he came to the scene of the accident seven days after the accident occurred and viewed the automobiles involved, including English's patrol vehicle. While there, he testified that he spoke with a representative of the sheriff's department about downloading the information

12

contained in the black box. Approximately nine months after the accident, Bethea and the Benefields placed Pearl River County on formal notice that they were filing suit pursuant to the MTCA. Six months after that, the instant suit was filed, and Pearl River County was served with process.

¶28. As stated previously, as long as a trial judge's opinion following a bench trial is supported by substantial evidence, we will not overturn it. We agree that Pearl River County was sufficiently aware that Bethea and the Benefields were pursuing litigation in this matter. The expert witness's testimony regarding the attorneys' conversations is merely one layer in the stack of evidence showing that Pearl River County was on notice such that it should have preserved all information relevant to the accident that was in its possession. This argument is meritless.

¶29. Finally, Pearl River County argues that the trial judge failed to articulate in his order what evidence would have been found in the maintenance records and the black box that would have been unfavorable to Pearl River County. We find this argument to be baseless. In his order, the trial judge summarized his opinion on why the information contained in the maintenance records and the black box would have been probative as follows:

> First, the brake[-]maintenance light had been on for several weeks. Second, there is no record of maintenance to correct the faulty brakes. Third, the black box[,] which could have provided critical information about the brakes on the subject car and accident, along with information about the defendant's actions in [the] seconds preceding [the] impact, was destroyed or disposed of by [Pearl River County.] . . . [T]he negative presumption of spoliation . . . is warranted due to the destruction or disposition of items by [Pearl River County] which may have provided key information supporting [its] claims.

¶30. We find this to be a sufficient explanation of why information contained in the

13

maintenance records and black box would have been valuable. It is without question that the maintenance records would have shown whether or not the vehicle was inspected by the inmates in an effort to resolve the brake-light issue and, if inspected, what actions were taken to resolve the brake-light issue including what, in particular, the inmates found when investigating the vehicle's brake issues. With regard to the black box, Bethea and the Benefields' expert witness at trial testified that the black box would have given information for twenty seconds before the collision and five seconds after the collision on topics including, but not limited to, braking, details on the application of the brakes, speed, accelerator-pedal percentage, engine-throttle percentage, and ABS (anti-lock braking system) activation. Such information would have painted a clear picture to the trial judge as to the state of the vehicle leading up to the collision, as well as the manner in which English was driving leading up to the collision.

¶31. Given the information before us, we simply cannot find error in the trial judge's determination that the case warranted a negative inference of spoliation of evidence against Pearl River County. This issue is also without merit.

¶32. **THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.**

14