WESTBROOKS, J., DISSENTING:
¶ 32. I respectfully dissent from the majority. On the day of the incident, A.C. and T.H. were in the same homeroom class. T.H. was prompted to leave class before the other students as the school was aware of his violent and disruptive behavior and did not want him alone with any other students. The teacher's assistant testified that she watched him walk down the hall toward his ROTC class, but she could not see if he went into the classroom because of a wall pillar blocking her view. Moments later, the remaining students, including A.C., were released to go to art class. The teacher's assistant testified that she watched them get on the elevator to go to the second floor to their class.
¶ 33. T.H. and A.C. were seen in the hall by the security officer who testified to seeing them near each other, unsupervised, and he did nothing. Immediately after, the two students went into the restroom and had sexual intercourse. The parents and grandparents of A.C. brought a claim against Jackson Public School District *796 (JPS), alleging that A.C. was sexually assaulted by T.H. as a direct result of JPS's failure to provide proper care and supervision of the students. The trial court weighed the evidence and found that JPS did not breach its ministerial duty to supervise, and that if they did, there was no evidence that directly linked their breach and the sexual encounter together. The majority agrees; however, I do not share the same sentiment.
¶ 34. The majority states that there is no provision or duty imposed on the school that requires the teachers to escort each student to and from class. The governmental function of the school is ministerial, and section 37-9-69 of the Mississippi Code imposes a duty on all schools to supervise its students properly. See Smith v. Leake Cty. Sch. Dist. , 195 So.3d 771, 781 (¶ 36) (Miss. 2016). The majority is correct, however, that the school does have a duty to use ordinary care in controlling and disciplining students while also providing a safe environment. In this present case, there were three instances where the students were unsupervised: when T.H. was released to go to his ROTC class, when the students were put on the elevator, and when T.H. and A.C. were alone in the hallway together.
¶ 35. "There is no liability predicated on lack of supervision where the event in connection with the injury occurred is not reasonably foreseeable." Henderson ex rel. Henderson v. Simpson Cty. Pub. Sch. Dist. , 847 So.2d 856, 857 (¶ 3) (Miss. 2003). Henderson, a junior-high student, was taunted and injured by another student named Price, in the presence of their teacher. Henderson , 847 So.2d at 857 (¶ 2). As a result, Henderson's guardians brought a negligence action against the Simpson County Public School District. Id. The trial court granted summary judgment in favor of the school because there was "no issue of material fact surrounding foreseeability" and there was no evidence that the school district had any knowledge that Price had violent tendencies or that he had behavioral issues in the past. See id. at 857 (¶ 4). Henderson appealed and the Supreme Court found that "several material facts existed and that summary judgement was improper." Id. at (¶ 5). The Court found that "there [wa]s still an issue of fact as to whether the teacher had adequate time and, indeed, a duty, to intervene in the situation while Price was standing over Henderson brandishing his fist for at least one minute." Id. at 858 (¶ 5). The teacher's inaction to supervise her class beared on the question of ordinary care as in this present case. Id. at 858 (¶ 6).
¶ 36. T.H. had a history of causing harm to other students and displaying obscene sexual gestures; he should have been escorted to class, not A.C. Furthermore, T.H.'s behavioral history put the school on notice, which explains why he was not allowed to be released with the other students in the class. Jackson Public School (JPS) was aware of the possibility of an incident and could have reasonably foreseen T.H. causing injury to another student. Likewise, the principal testified that the security officer's duties include patrolling the hallway and reporting anything suspicions to the administrators or his supervisor. The security officer failed to act within the scope of his duties when he did not report seeing T.H. and A.C. in the hallway. In addition, JPS did not inform the security officer that he should monitor T.H. and, like Henderson , JPS's inaction to supervise the students bears on the question of ordinary care.
¶ 37. "[T]he school is not an insurer of the safety of pupils, but has the duty as variously described, of exercising ordinary care, of reasonable prudence, or of acting *797 as a reasonable person would act under similar circumstances." Levandoski v. Jackson Cty. Sch. Dist. , 328 So.2d 339, 342 (Miss. 1976). When the security officer saw T.H. and A.C. alone in the hallway, unsupervised, he failed to act as a reasonable person would when he failed to alert a teacher or staff member. Moreover, JPS failed to inform the security officer of whom to monitor closely, failed to use ordinary care in controlling T.H, and failed to provide a safe environment for A.C. For the aforementioned reasons, I find that the circuit judge's findings were manifestly wrong. See Pearl River County v. Bethea , 196 So.3d 1012, 1014-15 (¶ 10) (Miss. Ct. App. 2015) (providing standard of review).