910 So.2d 575 (2005)
Jacob PIGFORD, individually and by and through Mike Pigford, Natural Father and Next Best Friend, Appellants
v.
JACKSON PUBLIC SCHOOL DISTRICT, Marshall Frazier and Magill Jones, Appellees.
No. 2002-CA-01947-COA.
Court of Appeals of Mississippi.
February 1, 2005.
Rehearing Denied May 17, 2005.
Certiorari Denied September 8, 2005.
*576 Jamie Kelly McBride, Jackson, attorney for appellants.
Carolyn Curry Satcher, Terry R. Levy, Jackson, attorneys for appellees.
Before BRIDGES, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. Jacob Pigford is an autistic child who cannot verbally communicate. On the day of the incident that gave rise to this lawsuit, Jacob's teacher was in a meeting, and a teacher's aide was escorting Jacob to his classroom. Jacob became agitated and upset, while the teacher's aide continued to move Jacob through the hallway. Jacob suffered bruises as a result of the teacher's aide's attempts to restrain Jacob. Jacob's parents sued on Jacob's behalf, alleging that the teacher's aid used excessive force, that the school district failed to train and supervise its employees, and that the school district failed to establish guidelines regarding moving children like Jacob through crowded hallways.
¶ 2. Following a bench trial, the Hinds County Circuit Court entered a final judgment in favor of the defendants. The Pigfords appeal, raising the following issues:
I. WHETHER THE CIRCUIT COURT ERRED IN APPLYING THE WILLFUL AND WANTON STANDARD OF CARE WHEN IT FOUND THAT THE DEFENDANTS WERE NOT LIABLE
II. WHETHER THE CIRCUIT COURT ERRED IN FINDING THAT THE JACKSON PUBLIC SCHOOL DISTRICT PROVIDED JACOB WITH A REASONABLY SAFE SCHOOL ENVIRONMENT
¶ 3. Finding no error, we affirm.

FACTS
¶ 4. Jacob Pigford was an exceptional education student in the Jackson Public School District (JPSD) who attended Forest Hill High School. An autistic student, Jacob could not speak and had the maturity level of a three-year-old child. Jacob was subject to unpredictable outbursts triggered by a variety of things, including sudden noises, unfamiliar surroundings, and unfamiliar persons. Occasionally, Jacob would twirl, spin around, run uncontrollably flaring his arms, hit other students, or drop to the floor and refuse to *577 respond to instructions from his parents or teachers. All these characteristics of Jacob were known to JPSD.
¶ 5. On most mornings, Jacob's primary teacher, Marshall Frazier, would escort Jacob and the other exceptional education students to their respective classrooms. On November 15, 1999, Frazier was in a meeting with another student's parents and was unable to escort or supervise Jacob. Instead, Magill Jones, the teacher's aide who worked with Frazier, and another teacher, Donald Terry, escorted Jacob and the other exceptional education students to their classrooms. As was common, the ringing bell and rush of students caused Jacob to have an anxiety attack. Jones attempted to control Jacob by grabbing him and holding Jacob's arms in an effort to prevent Jacob from hurting himself or the other students. Jacob resisted Jones's attempts to restrain him and control his movements. Jones admitted that he tried to lift Jacob from the floor by picking Jacob up by his arms, but Jones denies that he used excessive force.
¶ 6. Later in the evening, as his parents were giving Jacob a bath, Jacob's parents noticed bruises on Jacob's arms. They telephoned Jacob's teachers and other JPSD officials to inquire about the injuries. A meeting was held the next morning to discuss the matter.
¶ 7. Jacob, his parents, JPSD's exceptional student area administrator, Jan Harkins, and Forest Hill principal, Don Thornton, attended the meeting. In response to Mr. and Mrs. Pigford's inquiry, Thornton individually summoned Frazier, Jones, and Terry. At the meeting, it was revealed that Jones and Terry made Frazier aware of the incident, but Frazier did not believe the incident was any more serious than other times that Jacob acted out. No one at Forest Hill noticed any bruises on Jacob because he was wearing a long-sleeved shirt.
¶ 8. Everyone agreed that the bruises on Jacob were unsightly. However, when Jacob was taken to the doctor, no treatment or medication was warranted or prescribed. Jacob was never treated by a psychiatrist or psychologist for the incident. Jacob's bruises went away in due course, and he completed the 1999-2000 school year without further incident.
¶ 9. Harkin and JPSD administrator Jeanette McCree were somewhat concerned with the incident and discussed whether any revisions to their school policies were needed to prevent further occurrences. After an investigation, they concluded that no additional remedial measures were needed, nor could they conclude that Jones or Frazier violated any school policies.
¶ 10. Jacob's father sued JPSD, Frazier, and Jones (collectively referred to as "defendants") on Jacob's behalf, believing that Jones used excessive force to restrain and control his son. The Pigfords further alleged that the administrators of Forest Hill and JPSD were negligent in their training of their employees. The Hinds County Circuit Court held that JPSD acted reasonably to counteract Jacob's behavior and that the Pigfords failed to meet the liability threshold to recover from Frazier, Jones, or the JPSD.
¶ 11. In deciding that the Pigfords failed to meet the liability threshold, the circuit court applied Mississippi Code Annotated Section 11-46-9(1)(x) (Supp.2004). This section specifically relates to the taking of action to maintain control and discipline of students. It states as follows:
A governmental entity and its employees acting within the course and scope of their employment or duty will not be liable for any claim:

*578 (x) arising out of the administration of corporal punishment or the taking of an action to maintain control and discipline of students, as defined in § 37-11-57, by a teacher, assistant teacher, principal or assistant principal of a public school district in the state unless the teacher, assistant teacher, principal or assistant principal acted in bad faith or with malicious purpose or in a manner exhibiting a wanton or willful disregard of human rights or safety.
¶ 12. The circuit court applied Section 11-46-9-1(x) to find that the defendants would have to exhibit a willful, wanton, and reckless disregard for Jacob's safety in order for Jacob to prevail. The court concluded that Jones's attempt to restrain Jacob was unintended. Thus, the circuit court judge concluded that there was no willful, wanton, reckless, or grossly negligent conduct.

ANALYSIS

I. WHETHER THE CIRCUIT COURT ERRED IN APPLYING THE WILLFUL AND WANTON STANDARD OF CARE WHEN IT FOUND THAT THE DEFENDANTS WERE NOT LIABLE
¶ 13. The Mississippi Tort Claims Act (MTCA) waives sovereign immunity from claims for money damages arising out of the tort of governmental entities and their employees acting within the course and scope of their employment. Miss.Code Ann. § 11-46-5 (Rev.2002). School districts are included as governmental entities. Miss.Code Ann. § 11-46-1(I) (Rev.2002). The exemption of a governmental entity from liability must be based on specified circumstances. These circumstances are outlined in Miss.Code Ann. § 11-46-9 (Rev.2002).
¶ 14. The Pigfords argue that the circuit court applied the incorrect standard in applying Miss.Code Ann. § 11-46-9(1)(x) and concluding that the defendants were not liable. They submit that the appropriate standard of care should have been ordinary care, under Miss.Code Ann. § 11-46-9(1)(b). This section states:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance, or regulation, whether or not the statute, ordinance or regulation be valid.
¶ 15. To support the proposition that 11-46-9(1)(b) should be applied, the Pigfords rely on L.W. v. McComb Separate Municipal School District, 754 So.2d 1136 (Miss.1999). In that case, the plaintiff was threatened by a fellow student, Matthew Garner. The plaintiff reported the incident to the teacher, who did nothing in response. Id. at 1137 (¶ 2). That afternoon, while they were both serving in detention, Matthew again threatened the plaintiff in front of the detention teacher. After they left detention, Matthew struck the plaintiff in the face and forced him to perform oral sex. Id. at 1137 (¶ 3). The supreme court found that Mississippi Code Annotated Section 11-46-9(1)(b) should apply, because the administration of public schools constitutes the execution of a statutory duty. Since the State requires all children to be enrolled in school, under Miss.Code Ann. § 37-13-69, the supreme court concluded that school personnel should use ordinary care in administering public schools. L.W., 754 So.2d at 1142 (¶ 25).
*579 ¶ 16. The case sub judice is distinguishable from L.W. In L.W., two teachers knew that Matthew threatened another student but failed to institute any responsive measures. Thus, the teachers failed to perform the statutory duty of administering public schools, causing § 11-46-9(1)(b) to apply. The case sub judice involves teachers maintaining control and discipline over a student, under Miss.Code Ann. § 37-11-57(2) (Rev.2001). This statute states:
Corporal punishment administered in a reasonable manner, or any reasonable action to maintain control and discipline of students taken by a teacher, assistant teacher, principal or assistant principal acting within the scope of his employment or function and in accordance with any state or federal laws or rules or regulations of the State Board of Education or the local school board does not constitute negligence or child abuse. No teacher, assistant teacher, principal or assistant principal so acting shall be held liable in a suit for civil damages alleged to have been suffered by a student as a result of the administration of corporal punishment, or the taking of action to maintain control and discipline of a student, unless the court determines that the teacher, assistant teacher, principal or assistant principal acted in bad faith or with malicious purpose or in a manner exhibiting a wanton and willful disregard of human rights or safety.
¶ 17. Jones's restraint of Jacob constitutes control and discipline. The legislature specifically directs our courts to apply Mississippi Code Annotated Section 11-46-9(1)(x) when a school official controls and disciplines a student under Mississippi Code Annotated Section 37-11-57. The circuit judge did not err in applying Miss. Code Ann. § 11-46-9(1)(x), which requires a showing of wanton and willful conduct for a plaintiff to recover.
¶ 18. The Pigfords argue that the actions to restrain Jacob do not fall under Section 37-11-57(2) because Jones's restraint of Jacob did not constitute both control and discipline. The Pigfords argue that no evidence was produced showing that Jones physically restrained Jacob for the purpose of disciplining him, because Jones's restraint of Jacob was not done for the purpose of punishing Jacob. We disagree. BLACK'S LAW DICTIONARY (8th ed.2004) defines discipline as "[c]ontrol gained by enforcing compliance." In other words, discipline is little more than an assertion of control over someone or something. Thus, the purpose of Jones's physical restraint of Jacob was both to control and discipline him.
¶ 19. The Mississippi Supreme Court has defined the wanton and willful standard in this way: "The usual meaning assigned to do [sic] terms is that the actor has intentionally done an act of unreasonable character and reckless disregard of the risks known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm would follow." Maldonado v. Kelly, 768 So.2d 906, 910 (¶ 8) (Miss.2000) (quoting Orthopedic and Sports Injury Clinic v. Wang Labs., Inc., 922 F.2d 220, 224 n. 3 (5th Cir.1991)). The Mississippi Supreme Court has also stated that "`wantonness' is a failure or refusal to exercise any care, while negligence is a failure to exercise due care.'" Id. at 910 (¶ 12).
¶ 20. The actions of the JPSD, Jones, and Frazier do not rise to the level required for the Pigfords to recover. As the circuit judge stated, the expert opinion of Jacob's psychiatrist regarding the use of *580 "excessive force" by Jones and his improper method of restraint falls short of the elements necessary to prove willful or wanton conduct. Moreover, the evidence shows that any injury to Jacob was unintended. We are unable to find any abuse of discretion as to these findings and must affirm.

II. WHETHER THE JACKSON PUBLIC SCHOOL DISTRICT PROVIDED JACOB WITH A REASONABLY SAFE ENVIRONMENT
¶ 21. The Pigfords argue that, even if they were required to show that Jones's conduct was willful, wanton, reckless, or grossly negligent, they are still entitled to judgment in their favor because the JPSD failed to provide a reasonably safe school environment. School personnel are required to use ordinary care in administering public schools. Ordinary and reasonable steps must be taken to minimize risks to students. L.W., 754 So.2d at 1142 (¶ 25). See also Pearl Pub. Sch. Dist. v. Groner, 784 So.2d 911, 915 (¶ 14) (Miss.2001). Therefore, the Pigfords are entitled to recover if they show JPSD's failure to provide ordinary care in maintaining a safe school environment.
¶ 22. The defendants were aware of Jacob's anxiety and his likely responses. They admitted knowing that Jacob became very anxious when he encountered crowds of students. Notwithstanding the defendants' knowledge of Jacob's anxiety around crowds and his responses to the crowds, the Pigfords claim that no accommodations were made regarding Jacob's transiting the school hallways. The Pigfords claim that the defendants failed to exercise ordinary care by not implementing procedures to help Jacob avoid encountering crowds. They also allege that the teachers of Forest Hill High School should have been trained to learn proper procedures for restraining an autistic child.
¶ 23. The Pigfords elicited testimony from Donald Thornton, the principal of Forest Hill High School. He was aware of Jacob's autism and admitted that he was unaware of any accommodation that had been made for Jacob. As the principal of Forest Hill High School, Thornton was in charge of adopting and implementing the scheduling of classes and the movement of students during the day. Thornton admitted that there was no reason that the teachers or teacher's assistants could not wait to move Jacob into the hallway until after the 8:30 a.m. tardy bell, when no regular education students would have been in the hallway. On this evidence, Jacob submits that the defendants failed to take any steps to minimize the risk that Jacob would experience an anxiety episode.
¶ 24. We find that Jacob was provided with a reasonably safe school environment. Testimony from Frazier, Terry, and Thornton highlighted the mandates of the Individuals With Disabilities Education Act (IDEA). 20 U.S.C. §§ 1400-87. The IDEA requires the school to mainstream disabled students to the extent possible, in the least restrictive environment. 20 U.S.C. § 1412(5). The defendants indicated that separating Jacob from the other special education students when walking Jacob to the classroom is a possible breach of the IDEA, because federal law prefers that students interact with other students. The IDEA requires that eligible individuals receive specialized education, supervision, and protection. This goal is achieved by implementing an Individualized Education Plan (IEP) to set forth any modifications or accommodations needed for the particular student in connection with his or her education. 20 U.S.C. § 1414(d). In compliance with the mandates of the *581 IDEA, Frazier, Terry, and Thornton were aware of Jacob's special needs and testified that they made every reasonable effort to accommodate Jacob and the other exceptional students. A student's IEP addresses all of the student's educational needs, including the need to create a reasonably safe school environment. Jacob's IEP was created with the input, cooperation, and approval of Jacob's parents. If Jacob's parents had concerns about Jacob's exposure to crowds or the teachers' inability to restrain Jacob properly, they could have addressed these concerns at the time Jacob's IEP was created.
¶ 25. At the time of the incident, there was no apparent need for Jacob to wait until after the tardy bell to escort Jacob to class. Even though Jacob sometimes got out of hand while walking to class, the evidence showed that Jacob could also easily become anxious in the classroom or in the cafeteria. The evidence also showed that Jacob's anxiety episodes were difficult to predict and were not always triggered by large crowds. For example, Jacob was able to attend pep rallies and other school-wide events without experiencing an anxiety attack.
¶ 26. Marshall Frazier, Jacob's primary teacher, was qualified to supervise Jacob and to insure a reasonably safe school environment for him. He holds a certificate in special education, and his duties as a teacher exclusively involve instructing and supervising severely handicapped students. Frazier, as well as all other JPSD teachers, have taken classes involving procedures to discipline and restrain children. On most days, Frazier was available to assist Jacob to class and walk side-by-side with him. Frazier usually had no problems controlling Jacob and could instruct Jacob to do things that no one else could do. It is a rare occasion for Frazier to be unable to walk with Jacob to his classroom.
¶ 27. November 15, 1999, was one day in which Frazier was unable to walk with Jacob to his classroom. While it would have been ideal for Frazier to have escorted Jacob to the classroom, we find that Jones's supervision was sufficient to create a reasonably safe environment for Jacob and for the other students at Forest Hill. Jones knew Jacob well and could control Jacob more easily than most teachers were able to do. Jones was walking side-by-side with Jacob when Jacob had his anxiety attack. During these anxiety attacks, it was common for Jacob to become violent with other children and to hit them. During this particular anxiety attack, Jacob was running into walls and tables. For these reasons, Jones was required to act quickly in order to prevent Jacob from hurting himself or others. We find that, under these circumstances, Jones took reasonable steps to minimize the risk of harm to Jacob. The Pigfords' assignment of error is without merit.
¶ 28. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.