WALLER, Chief Justice,
for the Court:
¶ 1. After a year of bullying and intimidation by a small group of students, Yahe-nacy Smith[1] was beaten and severely injured while riding the school bus home. Smith sued the Leake County, Mississippi, School District, alleging negligence, and negligence per se. The circuit court found that the school district was entitled to discretionary-function immunity and granted the school district’s motion for summary judgment. Smith appealed. Finding that the broad governmental function of the school district here is ministerial, we reverse the circuit court’s grant of summary judgment and remand the case to the circuit court for Smith to proceed with her claims.

FACTS AND PROCEDURAL HISTORY

¶ 2. Smith, a special-education student in the sixth grade, attended Leake Central Junior High School, located in the Leake County, Mississippi, School District (“Leake Central”). Helen Luckett and four other girls had 'established a pattern and practice of bullying Smith which began during the previous, 2012-2013, school year and continued until the incident in this case. Smith’s mother, Felicia Smith, had reported the bullying incidents and had asked the assistant elementary principal, the elementary principal, and the junior-high principal for help. On November 4, 2013, while riding the bus, Helen and her friends bullied Smith, including pulling Smith’s hair. Smith’s mother reported the incident to the school-bus driver. The bus driver then reported the incident to the school. For this incident, Helen received a five-day suspension from riding the school bus.
¶ 3. Even though the school had suspended Helen from riding the bus, the school principal placed Helen on the same bus as Smith on November 5, 2013. The principal stated that there was no other appropriate transportation available that day to take Helen home. The principal sat Helen down at the front of the school- bus, away from Smith, and under the bus driver’s supervision. Helen and the other four girls attacked Smith as the bus was on its after-school route. They broke Smith’s wrist and punctured her scalp by beating her with a metal belt buckle until she lost consciousness. The bus driver stopped the bus and called a county resource driver. Smith then was transported to the Baptist Medical Center in Leake County for treatment. The school expelled Helen for the incident.
¶ 4. Smith sued Leake Central in September 2015. She alleged claims of common-law negligence and claims of negligence per se under Sections 37-9-69, 37-11-67, and 37-11-69 of the Mississippi Code.[2] See Miss.Code Ann. §§ 37-9-69, 37-11-67, 37-11-69 (Rev.2013). Smith áf- *774 firmed that all claims were subject to the Mississippi Torts Claims Act (“MTCA”). Leake Central raised several defenses under Section 11-46-9 of the MTCA, including discretionary-function immunity. See Miss.Code Ann. § ll-46-9(l)(d) (Rev. 2012).
¶ 5. Leake: Central then filed a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6), or. alternatively, under Rule 56. Both parties submitted briefs to the circuit court. Since Leake Central attached an affidavit from the school principal to its motion to dismiss, the circuit court found that Leake Central’s motion had been converted into a motion for summary judgment under Rule 56. See Miss. R. Civ. P. 56.
¶ 6. In its order, the circuit court found that, when fully examined under the new paradigm, established in Brantley v. City of Horn Lake, 152 So.3d 1106 (Miss.2014), Sections 37-9-69, 37-11-67, and 37-11-69 of the Mississippi Code did not create ministerial duties for Leake Central and that the actions taken by Leake Central were discretionary. The circuit court found that, collectively, the ministerial demand was that school districts create policies which address bullying. But the circuit court believed that Leake Central’s handbook and the antibullying policy made the response of the school district to threats posed by potential bullies discretionary.[3] Additionally, the circuit court noted that Sections ll-46~9(l)(x) and 37-11-57 of the Mississippi Code each separately provide immunity for school officials in maintaining control and discipline of students. Thus, the circuit court found Leake Central was entitled to immunity and granted Leake Central’s motion for summary judgment.
¶7. Smith appeals and raises the following issues, which we restate as follows: (1) whether Leake Central’s governmental function was ministerial or discretionary; (2) whether the immunity afforded to acts taken by school officials to maintain control and discipline of students applies only to claims by those students tó whom school officials administered control' and discipline; (3) whether Smith exhausted her administrative remedies; and (4) whether the circuit court erred in refusing to allow Smith to provide rebuttal testimony at the motion hearing in . response to the school principal’s affidavit.

ANALYSIS

¶ 8. The standard of review for a trial court’s determination that a governmental entity is immune under the MTCA is de novo. Boroujerdi v. City of Starkville, 158 So.3d 1106, 1109 (Miss.2015). A de novo review also is applied to a trial court’s award of summary judgment. Id. Appellate courts are to consider all of the evidence in the light most favorable to the nonmoving party. Id. (quotation omitted). The nonmoving party “must set forth specific facts .showing, that there is a genuine issue for trial,” and the nonmovant may not “simply rest upon the mere allegations or denials of his pleadings.” Id. (quotation omitted).
I. Whether Leake Central’s governmental function is ministerial or discretionary.

A. The Mississippi Tort Claims Act

¶9. The MTCA “provides the exclusive civil remedy against a govern *775 mental entity ... for acts or omissions which give rise to a suit.” L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136, 1138 (Miss.1999). “Any tort claim filed against a governmental entity or its employee shall be brought only under the MTCAj” and a school district is a governmental entity under the MTCA. Id. at 1139. Under the MTCA, sovereign immunity is waived for claims for money damages arising out of the torts of governmental entities, and their employees, unless they are explicitly exempted from this waiver under Section 11-46-9(1) of the Mississippi Code. Id. at 1138-39. In pertinent part, Section ll-46-9-(l) of the Mississippi Code provides:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
[[Image here]]
(b) Arising out of any act or omission of an employee of 'a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not -the statute, ordinance or regulation be valid;
[[Image here]]
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
Miss.Code Ann. § ll-46-9(l)(d) (Rev.2012) (emphasis added). Summary judgment was granted to Leake Central based on discretionary-function immunity under Section 11 — 46—9(l)(d) of the Mississippi Code. So the issue before this Court is whether the circuit court erred in finding that Leake Central was immune under subsection (d).

B. Discretionary-Function Immunity

¶ 10. The following test for reviewing discretionary-function immunity was established in Brantley v. City of Horn Lake:
The Court first must consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial.. The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive .renders that particular duty a ministerial one, .notwithstanding that it may have been performed within the scope of a broader discretionary funetion. ..
Brantley, 152 So.3d at 1114-15.
¶ 11. Under the first step of the Brant-ley test, .Smith argues that the broadest governmental function of Leake Central is ministerial, since school districts neither have discretion in establishing school systems nor in organizing and operating schools. That is because Mississippi’s Constitution states that “[t]he Legislature shall, by general law, provide for the establishment, maintenance -and support of free public schools upon such conditions and limitations as' the Legislature may prescribe.” Miss. Const, art. 8, § 201. The Legislature'also'has enacted a series of statutes,''which mandate: the establishment ofi'á school district in every Mississippi' county (Miss.Code Ann. § 37-5-1 (Rev.20l3)); the governance of these school districts by a school board (Miss. Code Ann. § 37-6-7 (Rev.2013)); and that school boards shall organize a school in the counties,of their, jurisdiction. (Miss. Code Ann. § -37-7-311 (Rev.2013)) (emphasis added). ' Although school districts have discretion in deciding how to operate and maintain certain aspects of school systems, Smith argues that school districts have no *776 discretion in deciding whether to establish, organize, operate, and maintain school systems.
¶12. Leake Central disagrees and argues that these statutes do not serve to create a ministerial function as to how school officials discipline students. It is undisputed that providing public schools was never left to the discretion of the county. It seems clear that the broadest governmental function of a school district is to provide free public education. See Miss. Const, art. 8, § 201. But the Constitution and the cited statutes are silent as to Leake Central’s function as it pertains to providing a safe school environment and preventing bullying. There are, though, three other statutes that address the function of providing a safe school environment and of preventing acts of bullying. See Miss.Code Ann. §§ 37-9-69, 37-11-67, 37-11-69 (Rev.2013). So we must examine these statutes to determine whether they impose a ministerial or discretionary duty on Leake Central.

C. Whether Section 37-9-69 of the Mississippi Code is ministerial.

¶ 13. Smith argues that Section 37-9-69 of the Mississippi Code provides a direct obligation to maintain order and discipline in the school. This statute states, “[i]t shall be the duty of each superintendent, principal and teacher in the public schools of this state ... to observe and enforce the statutes, rules and regulations prescribed for the operation of schools. Such superintendents, principals and teachers shall hold the pupils to strict account for disorderly conduct ” including on the way from school. Miss.Code Ann. § 37-9-69 (emphasis added).
¶ 14. We consistently have held this statute applicable to cases such as Smith’s in which a school district failed to exercise ordinary care in its execution of the mandate to provide a safe school environment for students. See, e.g., L.W., 754 So.2d at 1141-42; Lang v. Bay St. Louis/Waveland Sch. Dist., 764 So.2d 1234 (Miss.1999); Henderson v. Simpson Cty. Pub. Sch. Dist., 847 So.2d 856 (Miss.2003). Indeed, this Court recently has held that Section 37-9-69 of the Mississippi Code imposes upon school districts a ministerial duty to “use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment.” The Moss Point Sch. Dist. v. Stennis, 132 So.3d 1047, 1050 (Miss.2014). So, under our precedent, Section 37-9-69 of the Mississippi Code imposes a duty on Leake Central to hold Helen and the other girls to strict account for bullying and harassing Smith, including on the school bus on the way home from school.[4]
¶ 15. As to this ministerial duty to provide a safe school environment, Leake Central counters that Moss Point relied on a line of cases that have been overruled. Next, Leake Central further attempts to distinguish Moss Point in that it was decided before Brantley. Thus, Moss Point offers no direction with respect to the new paradigm in which discretionary-function immunity might be considered. Both arguments are without merit.
*777 ¶ 16. As to Leake Central’s first argument that the line of cases cited in Moss Point has been overruled, those cases still stand for the proposition that Section 37-9-69 imposes a ministerial duty on school districts. In Moss Point, a student sued the school district for injuries she sustained in an off-campus assault by another classmate and that classmate’s mother. Id, at 1048-49. The issue was whether the school district had a duty of care to the student at the time of the incident. Id. at 1049-50.
¶ 17. This Court in Moss Point noted that “Section ll-46-9(l)(b) encompasses ministerial duties-those duties ‘which ha[ve] been positively designated[,]’ by ‘statute, ordinance, or regulation.’ ” Id. at 1050 (quoting Lang, 764 So.2d at 1240). This Court stated, that “[t]his Court has recognized that Section 37-9-69 creates a ministerial duty wherein ‘public schools have the responsibility to use ordinary care and to take reasonable steps to minimize foreseeable risks to students thereby providing a safe school environment.’ ” Id. at 1050-51 (quoting Henderson, 847 So.2d at 857 (quoting L.W., 754 So.2d at 1143)).[5]
¶ 18. L.W., the case cited in Moss Point, is still sound authority. The overruled portion of L.W. stated that “the statutorily imposed obligation to ‘hold pupils to strict account,’ a ministerial dictate, trumps the discretionary exception, regardless of the amount of discretion school personnel may exercise in carrying out this statutory obligation.” Id. at 1142. This was overruled by Mississippi Transportation Commission v. Montgomery, 80 So.3d 789 (Miss.2012). This Court in Montgomery stated:
[T]o the extent L.W., ... may be read to condone an interplay between Section ll-46-9(l)(b) and Section ll-46-9(l)(d) to determine whether the discretionary conduct of the governmental entity is exempt from liability -by applying the ordinary-care standard ... [this case] and any other cases which stand for this proposition, are expressly overruled. We clarify that,, in determining whether a governmental entity is exempt from liability under Section ll-46-9(l)(d), the two-part public function test ... must be used.
Id, at 797.[6]
¶ 19. So, while L.W. was overruled, that action was limited to the proposition that governmental entities must use ordinary care in exercising a discretionary function. L.W. still stands for the proposition that Section 37-9-69 of the Mississippi Code imposes a ministerial duty on school districts to provide a safe environment for their students. Thus, it was not error for this Court in Moss Point to rely on L.W.
¶ 20. As to Leake Central’s second argument that Moss Point is inapplicable because it was decided before Brantley— which established the new paradigm for discerning discretionary-function immunity — this argument also is without merit. Although this Court decided Moss Point before Brantley, it is important to note that Moss Point was handed down four months after Little v. Mississippi Department of Transportation, 129 So.3d 132 (Miss.2013). Brantley was primarily a clarification of this Court’s analysis in Little. Brantley, 152 So.3d at 1113. And *778 while Moss Point and other eases did not discuss Section. 37-9-69 within the context of discretionary-function immunity under Section 46 — 11—9(l)(d); ■ it is clear from the language of the statute and Moss. Point that Section 37-9-69 imposes a ministerial duty on Leake Central to provide a safe school environment.
¶ 21. Based on this Court’s precedent, and when examined under Section 46-11-9(l)(d)‘ and Brantley, Section 37-9-69 of the Mississippi Code imposes upon school districts a ministerial duty to provide a safe school environment. But the circuit court here, while acknowledging that Smith brought suit under Section 37-9-69 of the Mississippi Code, did not address this statute in its final order. Instead, the circuit court focused on Mississippi’s Anti-bullying Statutes, to which we now turn our attention.

D. Whether Mississippi’s Antibullying Statutes impose a ministerial or discretionary duty.

¶ 22. Smith also argues that Sections 37-11-67 and 37-11-69 of the Mississippi Code do not provide an exception to the broad, ministerial, governmental function of a school district as it pertains to its duties to. prevent acts of bullying. These statutes, Smith argues, impose upon school districts a ministerial mandate to take action, which prohibits acts, of bullying.[7]
¶ 23. Mississippi’s Antibullying Statutes state that “[n]o student ... shall be subjected to bullying ... by ... [other] stu-dents_” Miss.Code Ann. § 37-11-67(2) (emphasis added). Also, if a school employee witnesses a student being bullied, that school employee “shall report the incident to the appropriate school official.” Miss.Code Ann. § 37-11-67(4) (emphasis' added). The antibullying statutes also state that “each local school district shall include in its personnel policies, discipline policies and code of student conduct a prohibition against bullying ... and ‘ adopt procedures for reporting, investigating and addressing such behavior.” Miss.Code Ann. § 37-11-69. Leake Central has adopted an antibullying policy. After examining the antibullying statutes, the circuit court concluded that:
Collectively, the ministerial demand is that School Districts create policies, which address bullying. This section requires that districts include “anti-bullying” policies, there is no allegation that the defendant district failed in this ministerial regard. In fact, the district student handbook, and anti-bullying policy were provided in response tó the motion.
¶24. The circuit court continued: “a review of the district handbook, regarding discipline, again describes a discretionary process, such as ‘Consideration should be given to the age of' the student, cause, nature, condition and frequency of misconduct.’ ... The very language of the discipline policy narrows the duties to the discretion of the school authority.” The circuit court also noted that “the anti-bullying policy contains the qualifications “when in the determination of the school superintendent’..., Such language makes the response of the school district to threats posed by potential bullies to be discretionary.”
¶25, Smith argues that the circuit court erred in its analysis and that the *779 language in Sections 37-11-67 and 37-11-69 of the Mississippi Code positively imposes a mandate on school districts to prevent acts of. bullying against their students. The test for determining whether discretionary-function immunity attaches is not whether a political subdivision has discretion in deciding how to perform its duties; the, test is whether a political subdivision has discretion in deciding whether to perform its duties. Brantley, 152 So.3d at 1113 (citing Little, 129 So.3d at 138).
¶26. Smith argues that, although the text here provides a school district with discretion in deciding how to act in preventing bullying against its students and how to implement antibullying policies, the text clearly provides no discretion to a school district in deciding whether to take action to prevent acts of bullying and whether to enact and implement antibully-ing policies. Thus, Smith argues, neither Section 37-11-67 nor Section 37-11-69 of the Mississippi Code provides an exception to the broad, ministerial, governmental function of a school district as it pertains to its duties to prevent acts of bullying.
¶ 27. We agree. ' Examining discretionary-function immunity under Section 11-46 — 9(l)(d) and Brantley, the overarching function involved — holding students to strict account for disorderly conduct and preventing acts of bullying — is ministerial. And while Sections 37-11-67 and 37-11-69 give Leake Central discretion as to how to prevent bullying, thése statutes do not provide discretion as to whether to prevent bullying. Nor do these statutes override the ministerial statutory duty found • in Section 37-9-69 to provide a safe school environment. For this reason, we reverse the judgment of the circuit court and remand the case to the circuit court for trial on the merits to determine whether Leake Central used ordinary care-under Section 11 — 46—9(l)(b) of the Mississippi Code. - '
II. Whether the immunity afforded to acts taken by school officials to maintain control and discipline of students applies only to claims by those students to whom school officials administered control and discipline.
¶ 28. Smith argues that this Court should reverse the circuit-court judgment and remand' the ease because the circuit court made no specific findings as to how Section ll-46-9(l)(x) was a proper ground for an award of summary judgment. Smith also argues that this was an improper ground for an award of summary judgment, since actions taken to maintain control and discipline of students, as they apply under subsection (x), relate to the actions taken by school officials toward the students over whom They are exercising control and discipline, not students who are indirectly affected by the failure of school' officials to control and discipline.
¶ 29. Section ll-46-9(l)(x) of the Mississippi Code states that governmental entities are not liable for any claims:
Arising out -of the administration of corporal punishment or the taking of any action to maintain control and discipline of students, as defined in Section 37-11-57, by ... [an employee] of a public school district in the state unless the ... [employee] acted in bad faith or with malicious purpose or in a manner exhibiting a wanton and willful disregard of human rights or safety....
Miss.Code Ann. § ll-46-9(l)(x) (Rev. 2012). Additionally, Section 37-11-57 of the Mississippi Code states that:
Corporal punishment administered in a reasonable manner, or any reasonable action to maintain control and .discipline of students taken by a public school teacher, assistant teacher, princi *780 pal or assistant principal acting within the scope of his employment or function and in accordance with any state or federal laws or rules or regulations of the State Board of Education or the local school board or governing board of a charter school does not constitute negligence or child abuse. No public school teacher, assistant teacher, principal or assistant principal so acting shall be held liable in a suit for civil damages alleged to have been suffered by a student as a result of the administration of corporal punishment, or the taking of action to maintain control and discipline of a student, unless the court determines that the teacher, assistant teacher, principal or assistant principal acted in bad faith or with malicious purpose or in a manner exhibiting a wanton and willful disregard of human rights or safety.
Miss.Code Ann. § 37-11-57(2) (Rev.2013) (emphasis added).
¶ 30. In the final order, the circuit court noted that Leake Central also had sought immunity under these two sections. The circuit court stated that, while it is arguable that these statutes apply only in the “context of punishment of individuals, and not when students injure other students, the language of these statutes aré [sic] not so limited. This court need not resolve that question, but the existence of these statutes certainly supports a broader public policy favoring immunity for school officials.”
¶ 31. It is clear from a plain reading of the statute and caselaw that this subsection is inapplicable to this case. Leake Central’s reliance on Pigford v. Jackson Public School District, 910 So.2d 575 (Miss.Ct.App.2005), also is misplaced. In that case, a mentally disabled student had been forcibly restrained during an outburst, resulting in injury to that child. Pigford, 910 So.2d at 579. The Court of Appeals specifically noted that the Legislature had directed the courts to apply Section 11 — 46—9(1)(x) when a school official controls and disciplines a student under Section 37-11-57. Id.
¶ 32. But the injured party in Pigford is different from the injured party here. The injured party in Pigford was a student over whom the school official was exercising control and discipline. Smith is not that student. She is a student who was injured by another student over whom the school official was maintaining — or was failing to maintain — control and discipline. Sections ll-46-9(l)(x) and 37-11-57 are applicable only to claims by the student who was the object of discipline, and not injured third parties, such as Smith. Thus, while the circuit court granted summary judgment in Leake Central’s favor under Section ll-46-9(l)(x), this judgment is reversed and the case is remanded.
III. Whether Smith exhausted her administrative remedies.
¶ 33. Smith argues that the circuit court’s judgment should be reversed and the case remanded since the trial court made no specific findings about whether Smith had exhausted all administrative remedies before filing her notice of claim. And Smith also argues that this was an improper ground for an award of summary judgment since these administrative channels no longer provided a remedy to Smith after she was attacked by her fellow students.
¶ 34. We decline to address this issue, as we cannot find any reference to the exhaustion of administrative remedies in the circuit court’s final order. The trial court clearly dismissed the action on other grounds. So this issue is not properly before this Court. Besides, the issue here is not about Leake Central’s discipline of *781 Helen; it is about Leake Central’s failure to carry out the discipline imposed on Helen. The school had suspended Helen from riding the school bus. Then, that very same day, Leake Central placed Helen right back on that same bus with Smith. We fail to see what administrative remedies Smith could have exhausted here. So, as this case is not about Smith’s dissatisfaction with the decision of Leake Central officials, any argument that Smith failed to exhaust her administrative remedies is irrelevant. Thus, this issue is without merit.
IV. Whether the circuit court erred in refusing to allow Smith to provide rebuttal testimony at the motion hearing in response to the school principal’s affidavit.
¶ 35. Since the first issue is dispositive of this case, and as Smith has not given any information as to what Felicia Smith’s testimony would have provided that would have been relevant to this issue, we decline to address this issue.

CONCLUSION

¶ 36. Collectively, Sections 37-9-69, 37-11-67, and 37-11-69 impose a ministerial duty on Leake Central to provide a safe school environment and prevent acts of bullying against students. Additionally, immunity for school officials for acts taken to maintain control and discipline applies directly to situations involving the students over whom the school official administered control and discipline, not situations involving third-party students such as Smith, who were indirectly injured. For these reasons, we reverse the circuit’s court’s judgment granting Leake Central’s motion for summary judgment and remand this case to the circuit court for Smith to proceed on her claims.
¶ 37. REVERSED AND REMANDED.
KITCHENS, KING AND BEAM, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL, J. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.; LAMAR, J., JOINS IN PART. LAMAR, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY BEAM, J.; DICKINSON, P.J., JOINS IN PART.

. For purposes of this action, “Smith” will be used for the named plaintiff, Yahenacy Smith, a minor, by and through her natural mother and next friend, Felicia Smith.

. She alleged the District negligently had failed to provide ordinary care by failing: to properly supervise students, to properly discipline students, to hold students to strict account for disorderly conduct on school grounds, to properly monitor students, to provide a safe environment for--students, and to use ordinary care. She claimed that -Leake Central was further liable for negligence per se for failing to "hold the pupils to strict account for disorderly conduct at school .... ” in violation of Section 37-9-69 of the Mississippi Code; and for allowing bullying or harassing behavior to occur and continue in violation of Sections 37-11-67 and 37 — 11— 69 of the Mississippi Code.

. The circuit court stated that “[s]ignificant also, is the fact that in order to achieve the goals of protepting students from bull[ies], the district is again called upon to use it’s [sic] discretionary power under 37-9-71.” See Miss.Code Ann. § 37-9-71 (Rev.2013) (the school official "shall have the power to suspend ... for ... misconduct ... on the road to and from school ... in the determination of the [school official].”).

. Leake Central argues that this Section 37-9-69 does not always create a ministerial duty. Leake Central cites Doe v. Rankin County School District, 2014 WL 5448946, at *4 (Miss.Ct.App.2014) (holding that, while Section 37-9-69 provides a ministerial duty to hold students accountable for disorderly conduct at school, it does not dictate how this duty is to be carried out.). But that decision was reversed by this Court on certiorari, and the case was remanded for the parties to present evidence and arguments under the test set forth in Brantley. See Doe v. Rankin Cty. Sch. Dist., 189 So.3d 616, 619 (Miss. 2015).

. We note that, in the line of cases cited in Moss Point, Section 37-9-69 of the Mississippi Code was analyzed under Section 11 — 46— 9(1)(⅜) of the MTCA, and not under discretionary-function immunity under Section 11-46-9(l)(d).

. See also Collins v. Tallahatchie Cty., 876 So.2d 284, 289 (Miss.2004) (“[The] ordinary care standard is not applicable to Miss.Code Ann. § ll-46-9(l)(d).”). Id. '

. Bullying is defined as "any physical act ... that takes place on school property .... or on a school bus." Miss.Code Ann. § 37 — 11— 67(1) (Rev.2013) (emphasis added), Bullying can either "[p]lace[ ] a student ... in actual and reasonable fear of harm to ... her person ...” or "[c]reate[] or is certain to create a hostile environment by substantially interfering with or impairing a student's educational performance, opportunities or benefits...,” Miss.Code Ann. § 37-ll-67(l)(a)-(b).